**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| SCRUM ALLIANCE, INC., | : | |
|     Plaintiff, | : | |
| | : | |
|         v. | : | Civil Action No. 4:20-cv-00227 |
| | : | |
| SCRUM, INC., | : | |
| JEFF SUTHERLAND, and | : | |
| JJ SUTHERLAND, | : | |
| | : | |
|     Defendants. | : | |
| | : | |
| | : | |

**REPLY IN SUPPORT OF DEFENDANTS'**
**<u>MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER</u>**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...............................................................................................ii

INTRODUCTION.............................................................................................................. 1

ARGUMENT ..................................................................................................................... 2

    A.    The Court Lacks Personal Jurisdiction Over the Individual Defendants. ............... 2

    B.    Venue Is Improper in the Eastern District of Texas. ............................................... 4

    C.    The Case Should Be Transferred to the United States District Court in the District of Colorado Pursuant to the Irrevocable and Exclusive Forum Selection Clause in the License Agreements. ......................................................... 6

        1.    SAI Cannot Unilaterally Change the Forum Selection Clause ................... 6

        2.    The Forum Selection Clause Requires the Entire Case to be Transferred .. 7

        3.    The Defendants Did Not Waive Their Rights to Enforce the Forum Selection Clause .......................................................................................... 7

    D.    In the Alternative, the Case Should Be Transferred to the District of Massachusetts ......................................................................................................... 8

CONCLUSION .................................................................................................................. 9

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Avicanna, Inc. v. Mewhinney*,
    No. 18CA1331, 2019 WL 3949256 (Colo. App. 2019)...........................................................6

*Cincinnati Ins. Co. v. RBP Chem. Tech., Inc.*,
    No. 1:07-CV-699, 2008 WL 686156 (E.D. Tex. Mar. 6, 2008)..............................................4

*Cooke v. Jaspers*,
    No. CIVA H-07-3921, 2010 WL 918342 (S.D. Tex. Mar. 10, 2010)......................................3

*Francesca's Collections, Inc. v. Medina*,
    No. H-11-307, 2011 WL 3925062 (S.D. Tex. Sept. 7, 2011) .................................................5

*GI Sportz, Inc. v. APX Gear, LLC*,
    No. 3:16-CV-2020-D, 2016 WL 6650895 (N.D. Tex. Nov. 8, 2016).....................................9

*Glazier Grp., Inc. v. Mandalay Corp.*,
    No. CIV.A. H-06-2752, 2007 WL 2021762 (S.D. Tex. July 11, 2007)..................................3

*Inmar Rx Sols., Inc. v. Devos, Ltd.*,
    786 F. App'x 445 (5th Cir. 2019) .........................................................................................2

*Jones v. Petty–Ray Geophysical, Geosource, Inc.*,
    954 F.2d 1061 (5th Cir.1992)................................................................................................3

*McFadin v. Gerber*,
    587 F.3d 753 (5th Cir. 2009)..................................................................................................2

*Moncrief Oil Int'l, Inc. v. OAO Gazprom*,
    481 F.3d 309 (5th Cir. 2007).................................................................................................3

*Nuttall v. Juarez*,
    984 F. Supp. 2d 637 (N.D. Tex. 2013)..................................................................................6

*Rex Real Estate I, L.P. v. Rex Real Estate Exch., Inc.*,
    No. 4:18-cv-371-ALM, 2019 WL 2524830 (E.D. Tex. June 19, 2019) .................................5

*SGIC Strategic Glob. Inv. Cap., Inc. v. Burger King Europe GmbH*,
    839 F.3d 422 (5th Cir. 2016).................................................................................................8

*Spiegelberg v. Collegiate Licensing Co.*,
    402 F. Supp. 2d 786 (S.D. Tex. 2005) ..................................................................................9

*Stuart v. Spademan*,
    772 F.2d 1185 (5th Cir. 1985)...............................................................................................3

*Weatherford Int'l, LLC v. Binstock*,
452 F. Supp. 3d 561 (S.D. Tex. 2020) ......................................................................................7

**Statutes**

28 U.S.C. § 1391(a)...............................................................................................................4

28 U.S.C. § 1404(a)...........................................................................................................8, 9

**Other Authorities**

Fed. R. Civ. P. 12(b)(3)........................................................................................................4

Scrum, Inc., Jeff Sutherland, and J.J. Sutherland (collectively, "Defendants") hereby submit this reply in support of their motion to dismiss or transfer the case (Dkt. # 107 the "Motion").[1]

## INTRODUCTION

SAI's opposition is an exercise in obfuscation and a transparent attempt to confuse the issues before this Court.  Although SAI accuses Defendants' motion of "bordering on bad faith," the only disingenuous activity here is SAI's attempt to use irrelevant contacts with the state of Texas as a means of conferring personal jurisdiction over the Individual Defendants.  All of the new evidence that SAI claims to have "uncovered" supporting jurisdiction are red herrings.  As set forth in greater detail below, the fact that a Scrum, Inc. executive traveled to a retreat in Austin or that Scrum, Inc. taught a class in the Dallas-Fort Worth area carries no weight in a jurisdictional analysis of the *Individual Defendants'* contacts with the state of Texas.  Further, the fact that Jeff Sutherland was taking trips to several cities, including Houston, once a quarter for the purpose of "building business" is also immaterial because there is no nexus between that activity and SAI's claims against Dr. Sutherland.

SAI's remaining arguments with respect to venue and transfer of this case are similarly specious.  Venue is improper in the Eastern District of Texas because SAI has failed to demonstrate that a substantial part of the claims occurred in this District.  To the extent the Court does not dismiss this case, the action should be transferred to either the District of Colorado, pursuant to the irrevocable forum selection clause of the License Agreements, or to the District of Massachusetts based on the convenience of the parties and the witnesses.

---

[1]   Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

## ARGUMENT

### A.    The Court Lacks Personal Jurisdiction Over the Individual Defendants.

In the Motion, Defendants make a very narrow argument with respect to jurisdiction, specifically, that this Court lacks personal jurisdiction over the ***Individual Defendants***.    In attempting to manufacture specific jurisdiction over the Individual Defendants, SAI tries to obscure this issue by introducing every possible connection between ***any*** of the Defendants and the state of Texas.   SAI ignores the settled law that specific personal jurisdiction is claim-specific, and SAI must establish specific personal jurisdiction for ***each claim over each Defendant***. *See Inmar Rx Sols., Inc. v. Devos, Ltd.*, 786 F. App'x 445, 448–49 (5th Cir. 2019) ("Because 'specific personal jurisdiction is a claim-specific inquiry,' '[a] plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim.'") (alteration in original) (quoting *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009)).  SAI makes no attempt to make this particularized showing with respect to the sole claim against the Individual Defendants, *i.e.* breach of the License Agreements. Instead, SAI cites to a random selection of facts relating to the various claims and wholly unrelated activities.

The overwhelming majority of contacts with Texas that SAI points to are those of Scrum, Inc.[2]  SAI's opposition is littered with similar red herrings. For example, SAI attached as Exhibit B to its Opposition email correspondence between Scrum, Inc. and a third-party concerning a training with Scrum, Inc. in the Dallas-Fort Worth area, but there is no evidence or suggestion that this class was taught by either of the Individual Defendants.[3]

---

[2]  For instance, SAI spills much ink arguing, again, that Scrum, Inc.'s website allows the Court to assert jurisdiction over the Individual Defendants.  For the reasons set out in Defendants' opening brief, that argument is utterly meritless, because the activities of Scrum, Inc. do give rise to jurisdiction over the Individual Defendants. (Dkt. #107 at 11-12).

[3]  This correspondence is equally irrelevant for purposes of establishing venue.  Neither Dallas, Fort-Worth, nor Southlake are located within the Eastern District.

SAI also attempts to rehabilitate its deficient allegations by claiming that certain Scrum, Inc. activity was done "at the direction of Jeff and JJ Sutherland . . ." Opp. at 13-14. The fiduciary shield doctrine makes these allegations entirely irrelevant, as "jurisdiction over an individual cannot be predicated upon jurisdiction over a corporation." *Stuart v. Spademan*, 772 F.2d 1185, 1197 n.11 (5th Cir. 1985).  SAI pays lip service to the fiduciary shield doctrine, claiming that its assertions of jurisdiction over the Individual Defendants are "based upon their own individual infringing conduct[,]" but the only individual conduct that SAI identifies is the small number of classes that were taught within in Texas.[4]  Opp. at 19. This glancing and fortuitous contact is insufficient to establish specific jurisdiction within the limits of due process.

SAI also ignores the critically important fact that the License Agreements are governed by Colorado law and require that any disputes will be resolved there, and only there.  *See* (Dkt. #22-5 at § 8.5; Dkt. #22-6 at § 8.5).[5]  SAI does not even attempt to address cases in this circuit ascribing substantial weight to the presence of a choice of law and/or choice of forum provision in a specific jurisdiction analysis.  *See Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 481 F.3d 309, 313 (5th Cir. 2007) (facts that agreement provided for arbitration in Russia, under Russian law, "suggest that [Defendant] meant for the undertaking to remain wholly Russian in nature."); *Jones v. Petty–Ray*

---

[4]   The Individual Defendants do not dispute that personal jurisdiction maybe found based on their own specific acts, if those acts had reasonably foreseeable consequences within Texas. *See Cooke v. Jaspers*, No. CIVA H-07-3921, 2010 WL 918342, at *4 (S.D. Tex. Mar. 10, 2010) ("The fiduciary-shield doctrine did not bar jurisdiction over the individual officer because he was being sued for his own specific acts, which had reasonably foreseeable consequences within Texas, not for the corporation's acts."). The problem with SAI's argument is that it has failed to articulate such specific acts which support a finding of personal jurisdiction over the Individual Defendants.

[5]   Although SAI has attempted to unilaterally and retroactively amend the License Agreements after filing the complaint, those facts cannot be considered in evaluating whether there is specific personal jurisdiction.  *See Glazier Grp., Inc. v. Mandalay Corp.*, No. CIV.A. H-06-2752, 2007 WL 2021762, at *8 (S.D. Tex. July 11, 2007) ("Courts in the Fifth Circuit follow the same approach in specific jurisdiction cases, looking to facts up to the filing of the complaint rather than postcomplaint conduct.").

*Geophysical, Geosource, Inc.,* 954 F.2d 1061, 1069 (5th Cir.1992) (forum-selection and choice-of-law clauses "indicate rather forcefully" that defendant "did not purposefully direct its activities towards Texas"). SAI also does not refute that the parties negotiated and executed the License Agreements outside of Texas; none of the parties were located in Texas; the License Agreements do not specify the "hub of performance,"; or that the location of the Individual Defendants suggests that the performance would occur outside of Texas. SAI's silence on this issue is deafening.

Finally, SAI's request to allow the parties to complete discovery before ruling upon the motion to dismiss should be rejected out of hand. SAI commenced this action more than eight months ago and has had the benefit of several months of discovery, including the deposition of JJ Sutherland, Jeff Sutherland, and Scrum, Inc.'s Rule 30(b)(6) designee. The issues of jurisdiction and venue are threshold issues that must be resolved before the parties continue to expend tremendous resources litigating claims that should be resolved by another court. And, importantly, this proposed course of action would severely prejudice Defendants, who have yet to file an answer or their counterclaims, so as not to waive their jurisdictional objections. By deferring a ruling, the Defendants would therefore be deprived of the opportunity to complete discovery with respect to their counterclaims.

## B.   Venue Is Improper in the Eastern District of Texas.

In the Opposition, SAI failed to even argue, let alone prove, that a "substantial part of the events or omissions giving rise to the claim occurred" in the Eastern District of Texas such that the venue is proper. *Cincinnati Ins. Co. v. RBP Chem. Tech., Inc.*, No. 1:07-CV-699, 2008 WL 686156, at *5 (E.D. Tex. Mar. 6, 2008) (holding once a defendant moves for dismissal for improper venue under Fed. R. Civ. P. 12(b)(3) "the burden of sustaining venue will be on [the] Plaintiff."); *see also* 28 U.S.C. § 1391(a) (venue is proper in "(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. . . ."). SAI merely points out that ***some*** of the

events giving rise to its claims, not a ***substantial*** part, occurred in the Eastern District of Texas. Opp. at 21-23.  A few in person trainings related to SAI's marks over "the last several years" and alleged resident contact with the website are insufficient to establish the requisite substantiality. *See* Opp. at 21. Based on the facts alleged, SAI cannot establish that a substantial part of their claims occurred in the Eastern District of Texas. In fact, contrary to SAI's allegations, Defendants have performed no Licensed Scrum work in the Eastern District of Texas. Dkt. # 47-1 ¶¶ 3-4, 7.

In analyzing venue issues, courts consider several factors, "including whether the allegedly infringing activity took place in the district, 'whether confusion to consumers is likely to occur in the district, whether sales occur there, and whether the defendant actively targeted the district for advertising or other sales-related purposes.'" *Rex Real Estate I, L.P. v. Rex Real Estate Exch., Inc.*, No. 4:18-cv-371-ALM, 2019 WL 2524830, at *5 (E.D. Tex. June 19, 2019) (quoting *Francesca's Collections, Inc. v. Medina*, No. H-11-307, 2011 WL 3925062, at *1 (S.D. Tex. Sept. 7, 2011)). As demonstrated above, the SAI has failed to make the proper initial showing for any of these venue factors.

First, SAI does not refute the fact that Defendants have never taught any of the allegedly infringing LICENSED SCRUM courses in this District, which is the core of the allegedly infringing activity.  (Dkt. #47-1 ¶¶ 3-6).  Even if Scrum, Inc. did teach a class in Plano or McKinney, SAI has not shown that a ***substantial*** part of the events giving rise to this complaint occurred in this District, particularly when ***none*** of the classes involving Scrum, Inc's competing marks were taught in this District.

Second, SAI's conclusory allegations regarding Defendants' unspecified "advertising and marketing activities" are insufficient.  *See Francesca's Collections, Inc.*, 2011 WL 3925062, at *2 (granting motion to dismiss case for improper venue).

Third, SAI has failed to show that actual consumer confusion has occurred in this District, as demonstrated by Defendants. *See* Dkt. #31; Dkt. #31-25 (Sowers Report); Dkt. #116 (Memorandum in Support of Defendants' Motion to Exclude Survey Evidence and Testimony of David Franklyn). Accordingly, the mere fact that Scrum makes marketing information available online that *could* be accessed within this district is insufficient for venue. *Nuttall v. Juarez*, 984 F. Supp. 2d 637, 644 (N.D. Tex. 2013) ("The mere possibility that someone in this district might have accessed the [allegedly infringing defendant's] website, seen the listing for the "private function," and been confused by it is an inadequate basis for venue under Section 1391(a)(2)"). The cases cited by SAI do not compel a different result.

### C.  The Case Should Be Transferred to the United States District Court in the District of Colorado Pursuant to the Irrevocable and Exclusive Forum Selection Clause in the License Agreements.

#### 1.  SAI Cannot Unilaterally Change the Forum Selection Clause

It is particularly telling that SAI's primary argument against transfer is that the "irrevocable" forum selection clause in the License Agreement is "outdated" because SAI has attempted to unilaterally and retroactively modify the clause only after the Defendants filed their Motion to Dismiss and/or Transfer. *See* (Dkt. #22 at 21-23; Dkt. #47 at 8-9; *See* Sublett 30(b)(6) Dep. 126:23-131:5, Dkt. #56-1); *see also* (Sublett Decl., Dkt. #33-13 ¶¶3-4). However, as set forth in the Motion and its Supplemental Motion (Dkt. # 64), which are incorporated by reference, this change is barred under the relevant law on several grounds, including:

- Colorado law does not permit unilateral and retroactive amendment to the "irrevocable" and "exclusive" forum selection clause, without the Defendants' consent. (Dkt. # 64 at 4-5) (*citing Avicanna, Inc. v. Mewhinney*, No. 18CA1331, 2019 WL 3949256, at *1-5 (Colo. App. Aug. 22, 2019);

- SAI's purported unilateral modification to the forum selection clause is also plainly impermissible under general principles of Colorado contract law because any modification to a contract requires mutual assent and consideration, both of which are absent in this case. (Dkt. # 64 at 5-7 (collecting cases)); and

- SAI's unilateral and retroactive attempt to modify the parties' "irrevocable" consent to the forum section clauses in the License Agreements *after* Defendants moved the transfer this case violates the duty of good faith and fair dealing.  (Dkt. # 64 at 8).

       2.    <u>The Forum Selection Clause Requires the Entire Case to be Transferred</u>

SAI's argument that the forum selection clause in the License Agreements only implicates the claims against the Individual Defendants is also incorrect.  "The scope of a forum-selection clause is not limited solely to claims for breach of the contract that contains it."  *Weatherford Int'l, LLC v. Binstock*, 452 F. Supp. 3d 561, 572 (S.D. Tex. 2020) (citation omitted).  Here, *all* of SAI's claims implicate the License Agreements. Indeed, the Individual Defendants use of marks under the License Agreement is inextricably tied to SAI's claims against Scrum, Inc. because the License Agreements govern the Individual Defendants use of the marks with through their "Affiliates", *i.e.* Scrum, Inc.  *See e.g.* (Dkt. #22-5 at App'x A and Dkt. #22-6 at App'x A ("You may identify Yourself using Certified Scrum Trainer® on Your or Your Affiliates' Materials")).  Because SAI's claims against Scrum, Inc. include allegations that Scrum, Inc. use of these same marks violated federal and Texas trademark law, severing the claims against the Individual Defendants would invite the possibility of conflicting results if a different court concluded that the use of these marks by Scrum, Inc. was permissible.

       3.    <u>The Defendants Did Not Waive Their Rights to Enforce the Forum Selection Clause</u>

Contrary to SAI's assertion, Defendants in no way waived their rights to have the claims adjudicated in Colorado pursuant to the forum selection clause. In their Original Complaint, SAI

asserted claims related to the Scrum@Scale ("S@S") joint venture.   In response, Defendants initially asserted the need to arbitrate claims in Delaware pursuant to the S@S Agreement's mandatory arbitration clauses. *See* Dkt. #45 at 2.   In response to Defendants' First Motion to Dismiss, SAI substantially altered its claims to remove all mention of S@S. In the SAC, SAI has asserted claims that invoke the License Agreements, not the S@S Agreement. (SAC ¶¶ 39, 42-45).

The case cited by SAI is similarly inapplicable.   In that case, the party purportedly "invoke[d] the judicial process [in derogation of the forum selection clause]" by filing a complaint in a forum other than the one identified in the forum selection clause. *See SGIC Strategic Glob. Inv. Cap., Inc. v. Burger King Europe GmbH*, 839 F.3d 422, 427 (5th Cir. 2016) (alteration in original). SAI has not cited any case in support of its claim that invoking a forum selection clause on a motion to transfer satisfies this prong.   Moreover, SAI's meager attempt to satisfy the second prong by claiming it was prejudiced as a result of having to respond to Defendants' legitimate transfer arguments, arguments it was so threatened by that it tried to modify the forum selection clause, hardly passes muster.   Thus, Defendants did not waive their rights with respect to enforcing the forum selection clause.

### D.   In the Alternative, the Case Should Be Transferred to the District of Massachusetts

To the extent that the Court holds that the forum selection clause does not require some or all of SAI's claims to be brought in Colorado, any remaining claims should be transferred to the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses. Here, there is no question that the claims could have

been brought in the District of Massachusetts, and that to the extent the claims have merit, the substantial nexus of the events occurred in Massachusetts, not Texas.[6]

The balancing of the public and private interest factors clearly favors transfer. The place of the alleged wrong is within the District of Massachusetts. *Spiegelberg v. Collegiate Licensing Co.*, 402 F. Supp. 2d 786, 791-92 (S.D. Tex. 2005) ("the place of the alleged wrong is one of the more important factors in venue determinations."). The convenience of the parties and the witnesses weighs strongly in favor of transfer. *See id.* at 790-91 ("The relative convenience to the witnesses is often recognized as the most important factor under § 1404(a).").

As a result, upon a holistic consideration of the factors at issue, transfer is warranted under 28 U.S.C. § 1404(a).  *Cf. GI Sportz, Inc. v. APX Gear, LLC*, No. 3:16-CV-2020-D, 2016 WL 6650895, at *7 (N.D. Tex. Nov. 8, 2016) (granting motion to transfer after a holistic consideration of the relevant factors).

## CONCLUSION

For the foregoing reasons, the Court should grant the Defendants' Motion and dismiss the Second Amended Complaint.   Alternatively, the case should be transferred to the District of Colorado or the District of Massachusetts.

<div style="margin-left:40%">

BROWN RUDNICK LLP
  */s/ Edward J. Naughton*
Edward J. Naughton (*pro hac vice*)
Jessica T. Lu (*pro hac vice*)
One Financial Center
Boston, MA 02111
Telephone: (617) 856-8200

</div>

---

[6]  Specifically, Scrum, Inc. is headquartered and has its principal place of business within that district.  Moreover, most of Scrum, Inc's employees reside in Massachusetts and Defendants predominantly developed their Licensed Scrum course offerings in Massachusetts.  Dkt. # 22-2 ¶ 14.  And Jeff Sutherland resides in Massachusetts.  Dkt. # 22-3 ¶ 3.

Facsimile: (617) 856-8201
enaughton@brownrudnick.com
jlu@brownrudnick.com

-and-

Dylan P. Kletter (pro hac vice)
Anthony J. Boccamazzo (pro hac vice)
Kelsey D. Bond (pro hac vice)
185 Asylum Street, 38th Floor
Hartford, CT 06103
Telephone: (860) 509-6500
Facsimile: (860) 509-6501
dkletter@brownrudnick.com
aboccamazzo@brownrudnick.com
kbond@brownrudnick.com

-and-

Andrew B. Ryan
Texas State Bar No. 24054464
Ryan Law Partners LLP
3811 Turtle Creek Boulevard, Suite 780
Dallas, Texas 75219
Telephone: (214) 347-7360
andy@ryanlawpartners.com

*Attorneys for Defendants Scrum, Inc.,
Jeff Sutherland, and J.J. Sutherland*

Dated:  November 19, 2020

## CERTIFICATE OF SERVICE

I certify that the foregoing document was filed electronically on November 19, 2020, pursuant to Local Rule CV-5(a) and has been served on all counsel who have consented to electronic service. Any other counsel of record will be served by first class U.S. mail on this same date.

*/s/ Edward J. Naughton*
Edward J. Naughton (pro hac vice)

10