# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| SCRUM ALLIANCE, INC., | § | |
| | § | |
| PLAINTIFF, | § | CIVIL ACTION NO. 4:20-CV-00227 |
| | § | |
| v. | § | |
| | § | JURY DEMANDED |
| SCRUM, INC., | § | |
| JEFF SUTHERLAND, and | § | |
| JJ SUTHERLAND, | § | |
| | § | |
| DEFENDANTS. | § | |

## <u>DECLARATION OF DAVID FRANKLYN</u>

I, David Franklyn, declare as follows:

1.      I am over the age of twenty-one years, am of sound mind and am otherwise fully competent to make this declaration. I am the Director of the McCarthy Institute for Intellectual Property and Technology Law and Editor-in-Chief and co-author of McCarthy's Desk Encyclopedia of Intellectual Property Law. I am also a Professor of Law and Business at Golden Gate University.  I have conducted numerous surveys, have been admitted as a survey expert in state and federal court, and have never had any of my testimony excluded.  I have personal knowledge of the facts contained in this declaration and those facts are true and correct. I submit this Declaration in support of Plaintiff Scrum Alliance, Inc.'s Response to Defendants' Motion to Exclude Survey Evidence and Testimony of David Franklyn.

2.      I have been retained by Plaintiff Scrum Alliance, Inc. to provide my expert analysis to assess any confusion that exists between the certification courses offered by Scrum Alliance, Inc. and Defendant Scrum, Inc.  I conducted a survey and prepared a report that was served on October 2, 2020.

3.      I understand that Defendants have engaged the services of Brian Sowers to rebut my opinions and conclusions.  I also understand that Defendants have filed a motion to exclude my survey and testimony.   I have reviewed Mr. Sowers' report and Defendants' Motion to Exclude.

4.      Defendants assert that my survey and testimony should be excluded for four reasons: the survey respondents were not part of the relevant universe; the survey's screening questions were leading and introduced "demand effects"; the survey used an improper control stimuli; and the survey had errors in coding open-ending answers.  I disagree with Mr. Sowers' opinions and Defendants' arguments as explained in detail below.

5.      The survey respondents were from the correct universe. Respondents had to meet numerous criteria to participate in the survey. First, respondents had to be older than 24 years of age.  Respondents could not work for a company that sells project management software or services, such as Scrum-related services, and respondents' title at their job could not be an intern or volunteer.

6.      Critically, in order to qualify to participate in the survey, respondents were required to say that they (1) had completed or were considering completing a certification course for a project management framework within the next 12 months **and** (2) were required to be aware of at least two project management framework platforms.  There was also a fictitious brand placed in the awareness list of project management frameworks to eliminate guessing. A total of 585 respondents qualified to participate in the survey.

7.      Defendants attack the survey's universe claiming it was too broad, stating that the interested universe should be limited to corporate decision makers for the Scrum project management framework.  Within Diamond and Swann, it is stated that "When designing a

**DECLARATION OF DAVID FRANKLYN**                                    Page **2** of **10**

survey for a Lanham Act case, it is crucial to select a universe that corresponds with the group or groups of consumers whose state-of-mind is relevant to the particular legal issue involved in the case." Diamond, S.S. & Swann, J.B. (2012). Trademark and Deceptive Advertising Surveys: Law, Science, and Design. American Bar Association, Section of Intellectual Property Law, p. 27.

8.      It is wrong to believe that only corporate decision makers' confusion is relevant in this case. I am unaware of any evidenced produced by Defendants demonstrating that Scrum credentialing courses are only available to individuals in their capacity as corporate employees. To the contrary, a substantial number of Scrum credentialing courses are open for enrollment to members of the public without any connection to their place of employment. Notably, Defendants teach numerous public classes that are available to anyone who goes to Defendants' website and registers for the class.

9.      Regardless, the survey's universe included corporate decision makers. The survey included 440 respondents who held C-Level, Vice President, Director, or Manager roles, necessarily making them the type of decision makers that would be tasked with choosing the credentialing course selected for the company's employees. Respondents with these titles represent 75.1% of the total survey sample within my survey.

10.      Defendants are wrong that end-user confusion is irrelevant. The 5th Circuit considers end-user confusion in its likelihood of confusion analysis and there are abundant examples of why that is an important inquiry here.  For example, the end-user may decide to take or decline his or her company's in-house Scrum credentialing course based on his or her understanding of who is providing the course; the end-user may want to enroll in additional credentialing courses offered to the public after the in-house course; the end-user may be tasked

with implementing, promoting, or discussing Scrum project framework after taking the course and his or her confusion as to the source of the training and the certification that he or she holds would be damaging. Because the survey included corporate decision makers and individuals who have or are considering completing a certification course for a project management framework in the near future, the universe of respondents was appropriate.

11.     Nor was it necessary to ensure that all survey respondents had a certain level of knowledge about the Scrum project management framework as opposed to various other project management frameworks.  Scrum is one type of project management framework out of several in the marketplace. Consumers who are interested in training programs in the field of project management frameworks are in the relevant universe of consumers because they would, or are likely to, encounter Scrum in the marketplace.

12.     Defendants' second argument is that the survey's screening questions introduced demand effects.  This argument is puzzling at best.  Mr. Sowers seems to ignore common survey practice for screening survey participants. He takes issue with screening questions seeking to understand whether survey participants are within the relevant universe.  Mr. Sowers' criticisms regarding the screening questions are internally inconsistent: on one hand he argues that the survey's universe was too broad and on the other he argues that there were demand effects that improperly guided survey participants to the correct answer in order to qualify for the relevant universe.

13.     Mr. Sowers asserts that the survey should have provided survey respondents with specific project management frameworks to choose from when asked if they have or are considering completing a certification course, instead of simply asking whether they had or were considering completing such a course. Mr. Sowers' proposed method would not solve the issue

**DECLARATION OF DAVID FRANKLYN**                                     Page **4** of **10**

that he identifies as problematic. If respondents were trying to "game the system" to ensure they were included in the survey's universe, then Mr. Sowers' approach would yield similar results, as survey respondents would be presented with a host of examples for the types of project management framework courses that they could select as ones they had or intended to complete in the future.  In fact, Mr. Sowers' recommendation could create an even greater demand effect because it would provide a list of examples for respondents to identify, and according to Mr. Sowers' rationale, the question would encourage respondents to select one or many of those prompted choices.

14.     Survey respondents must be trusted to provide accurate and truthful responses to screening questions like those challenged here.  The survey's screening questions were appropriate and were not leading or introducing demand effects.  In designing my survey, I included a list of leading project management framework platforms when testing respondents' knowledge in order to accomplish two things. First, in order to provide a list of industry leading platforms which, if known, could lead to respondents becoming aware of Scrum. Secondly, to blind respondents from the fact that Scrum was the key framework of interest within the survey.

15.     For the brand funnel question (Q9), this question was designed using principles well established in the world of market research, where consumers are shown a list of brands and asked to identify their relationship with each brand.  For the other questions of interest in the screener (Q8, Q10, and Q11) respondents were asked the questions in a neutral way, with an option to indicate in the positive, in the negative, and were provided an answer option if they did not know or had no opinion.  This is not improper, did not introduce demand effects, and is in line with general litigation survey practices.

16.     Defendants also argue that the survey used an improper control stimuli. Defendants assert that the survey used a "bogus control" because the controls used were "radically different" from the Scrum Alliance and Scrum, Inc. websites.   But Defendants overlook a critical aspect of selecting a control: avoiding a control that is itself infringing. It is imperative that in an effort to control for all non-infringing elements of a mark, a survey must not select an infringing mark.  That is especially true here where the mark uses two words that are commonly used within the Scrum framework—Scrum Master—and appending almost any word signifying credentialing to those two words is very likely to create an infringing mark.

17.     A central feature of Defendants' infringement in this case is based on the fact that they choose a mark that used a synonym for certified (i.e. licensed) in front of Scrum Master. Had I simply used another synonym or word like certified or licensed in front of Scrum Master, it would have created an improper infringing control.

18.     I note that Mr. Sowers does not specifically address the control he believes would have been proper, other than to suggest that "an appropriate control in this matter would be a modified image of the Scrum Inc. website (test stimulus) with all references to "Licensed Scrum Master" changed to another name."  Mr. Sowers does not elaborate on what other name should have been selected.  Regardless, this suggestion (or criticism) is misguided because it too risks using a control that is itself potentially infringing on Plaintiff's marks.  Nor did Mr. Sowers conduct any primary research on his own to verify or falsify any of his assumptions or arguments.

19.     In order to ensure that I did not use a potentially infringing control in the survey, I selected two companies who offer leading project management framework certification courses, which are the services offered in connection with the marks at issue in this case.  One of the

**DECLARATION OF DAVID FRANKLYN**                                        Page **6** of **10**

companies refers to Scrum and Scrum Alliance within the body of their certification course language.  Where, as here, it is alleged that Defendants' name and website are or have been infringing in multiple respects, it is appropriate to use controls that are different from the Defendants' website.

20.     Defendants also point out that neither of the survey's controls included companies with "Scrum" in their name. As explained in detail above, Scrum is merely one project management framework out of many, and consumers regularly encounter a variety of frameworks in the credentialing or training marketplace.  There is no requirement for the control's company name to include Scrum given what consumers actually interact with in real world conditions.  This is further demonstrated by the fact that both controls used were not invented or created solely for purposes of the survey, but instead are real companies offering competitive products in the marketplace to Scrum Alliance and Scrum, Inc.

21.     The amount of confusion resulting from the control further demonstrates that it was proper and did not suppress confusion as "bogus controls" are known to do; indeed, if anything there was a surprising amount of confusion for brand names that do not include Scrum. Of course, with an abundance of caution, the entire amount of confusion associated with the control was subtracted from the significant level of confusion resulting from Defendants' use of their Licensed Scrum marks.

22.     The final argument Defendants make is that the survey improperly coded open-ended answers. An expert's job in reviewing open-ended answers is to ensure that there are no clear indicators of people who did not understand the survey question asked.  If there are such indicators, then those respondents should be removed.  Mr. Sowers argues that certain open-ended answers appeared too vague.  The open ended questions Mr. Sowers complains about

followed questions asking: (1) whether the course is put out by the same company or a different company as the course they were shown in the first section of the survey and, for those who responded the "same company," (2) why they think the course shown is made or put out by the same company as the course shown in the first section of the survey.  Mr. Sowers emphasizes the word "company" to then argue that perhaps respondents were referring to the name of the company (and not the credentialing courses) in their open-ended responses.

23.    When asked specifically about their rationale for confusion, respondents were asked "Please explain in as much detail as possible what makes you think that the project management certification course shown on this page is made or put out by the same company as the project management certification course you were shown in the first section of the survey?"

24.    Mr. Sowers ignores the context of this very focused line of questioning. When a respondent provides comments such as "same name" and "similar names" it is only logical to conclude that they are indeed referring to the names of the courses, not the names of the companies. Mr. Sowers does not cite to *any* specific open ended questions, but instead only makes generalized arguments that it is difficult to determine whether the name of the course or company is being referred to as the source of the confusion.

25.    Mr. Sowers cites Professor McCarthy for the proposition that "treating inconclusive responses as definite, unqualified responses in a final survey tabulations is a methodological deficiency."  Within my survey, respondents were asked a specific question about the Plaintiff's and Defendants' credentialing courses and whether the respondent believed it was offered from the same company.  The respondents that answered in the affirmative were asked to elaborate on their rationale, which then elicited the responses that Mr. Sowers' cites. Within that context it is clear what the respondents were referring to with answers such as "same

**DECLARATION OF DAVID FRANKLYN**                                                      Page **8** of **10**

name" and "similar names"—the competing credentialing courses. Mr. Sowers' criticisms of my coding decisions are misplaced and misleading.

26. Since I conducted the survey and prepared my report, I have reviewed additional documents that have been produced during discovery. These documents are attached hereto as Appendix 1. The documents in Appendix 1 consist of email communications from prospective credentialing course purchasers, people who have recently completed credentialing courses, and employees of both the Plaintiff and Defendant in this matter. Upon review of these emails, it is my opinion that relevant consumers in this marketplace have already been confused as to the relationship and/or affiliation between Scrum Alliance and Scrum, Inc. Consumers are also unclear as to whether completing a Licensed Scrum credentialing course through Scrum, Inc. qualifies for designation as a Certified ScrumMaster. Indeed, several course participants appear to be under the mistaken impression that the Licensed Scrum Master credential is conferred by the same company that confers the Certified ScrumMaster credential. This evidence of actual confusion is, in my opinion, damaging to both the course participants and to Scrum Alliance. In circumstances such as these, Scrum Alliance risks losing quality control over its certification marks and consumers risk misrepresenting themselves to employers and others in the relevant marketplace. The evidence of actual confusion that I have been provided with and have reviewed here further supports and validates my survey findings and conclusions based thereon. I reserve the right to prepare and serve a supplemental report using any new information or documents uncovered during discovery or otherwise as this case proceeds.

27. Mr. Sowers argues that the survey tests perceptions related only to the Licensed Scrum Master mark and not the other marks at issue such as the Licensed Scrum Trainer and Licensed Scrum Product Owner. The survey results set forth in my expert report apply to

**DECLARATION OF DAVID FRANKLYN**                                    Page **9** of 10

Defendants' other marks, Licensed Scrum Trainer and Licensed Scrum Product Owner. Within my survey, a majority of respondents within the interested universe are confused as to the relationship between the two certification courses. For an appreciable portion of the interested universe, their rationale for this confusion is the similarity of course names. Additionally, the naming structure used by Scrum, Inc. is virtually identical to the Scrum Alliance naming structure with only minor changes.

28.    Finally, I would note that Mr. Sowers holds himself out on his website as a survey expert and he had the opportunity to conduct a survey which could have tested his hypotheses and assertions in this matter. Within this case, he offered no empirical evidence to support his contentions.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 30, 2020.

David J. Franklyn

David Franklyn

# APPENDIX 1

Message

**From:**      Jim Damato [jim.damato@scruminc.com]
**Sent:**      11/3/2017 12:30:37 PM
**To:**        Cyril Py [cyrpy1@slb.com]
**CC:**        Alfons Bochove [abochove@slb.com]
**Subject:**   Re: [Ext] Questions for Proposal

Cyril,

The Licensed Scrum Master (LSM) training receives formal recognition through Scrum Inc, where as the Certified Scrum Master (CSM) is through the Scrum Alliance.

The Scrum Alliance has some tight controls over CSM content and delivery. Scrum Inc, being the inventors of Scrum, has introduced the LSM as a way to allow us to better serve our customers. Other organizations have done something similar.

The LSM allows us more flexibility to serve your timelines, some customization of the course content, provide deeper testing and better analytics on where attendees fell short on the training & testing. With the CSM, there is no tweaking of course content allowed, testing is quite easy and no analytics are available beyond pass/fail.

In short, the CSM has wider recognition in a job hunt, but we firmly believe the LSM delivers more value for our customers.

On Fri, Nov 3, 2017 at 1:17 PM, Cyril Py <cyrpy1@slb.com> wrote:

**Schlumberger-Private**

Hi Jim


One more question on the Licensed Scrum Master Training: will the participants be able to become Certified Scrum Master by taking the test online?


Regards,

Cyril Py,

Schlumberger, ITE SAP PMO Manager

+1 **832 462 2784 Phone**

+1 **713 456 9348 Mobile**

---

**From:** Cyril Py
**Sent:** Friday, November 03, 2017 11:15 AM
**To:** 'Jim Damato' <jim.damato@scruminc.com>

PLAINTIFF'S
EXHIBIT
198

**Cc:** Cyril Py <cyrpy1@slb.com>; Alfons Bochove <ABochove@slb.com>
**Subject:** RE: [Ext] Questions for Proposal


### Schlumberger-Private

Jim,


One more question: Will Jens/Laurens be available as a coach in Jan/Feb/Mar?


Regards,

Cyril Py,

Schlumberger, ITE SAP PMO Manager

**+1 832 462 2784 Phone**

**+1 713 456 9348 Mobile**


> **From:** Jim Damato [mailto:jim.damato@scruminc.com]
> **Sent:** Friday, November 03, 2017 10:30 AM
> **To:** Cyril Py <cyrpy1@slb.com>
> **Subject:** Re: [Ext] Questions for Proposal


> Cyril,


> Yes, I do. Each coach has a throughput of about 25 people and that is what I believe the pilots should start with, so a total of 50 people. We'll do 25 people for SAP and 25 people for OS Digital.


> Recall that Jeff Sutherland said start with a pilot of 6-9 teams. If you average 7 people per team, 6-9 teams is 42 to 63 people. Our trainings are delivered in 25 person and 50 person tiers, and 50 is right in the middle.

SLB_002069

It's is absolutely critical that we get the Scrum bubbles working well before scaling them. I know there is a culture and desire to go All-In, but I cannot support it. The problems are much easier to find and resolve with smaller teams. If we don't find and fix the issues that have been holding you back all this time, nothing else matters and we're all just wasting time and money.

On the flip side, we are completely comfortable with the bright light of leaderships attention. We know there will be a lot of attention and in fact, we welcome it.

On Fri, Nov 3, 2017 at 11:16 AM, Cyril Py <cyrpy1@slb.com> wrote:

**Schlumberger-Private**

Hi Jim,

Yes we have received it thank you.

I am reviewing with my colleagues in few minutes and we definitively let you know if we have more questions.

One question at this time: Do you think that 2 coaches will be enough for Jan/Feb/Mar for *OS Digital* and *SAP* Scrum Teams?

Regards,

Cyril Py,

Schlumberger, ITE SAP PMO Manager

+1 **832 462 2784** **Phone**

**+1 713 456 9348** **Mobile**

**From:** Jim Damato [mailto:jim.damato@scruminc.com]
**Sent:** Friday, November 03, 2017 10:11 AM

**To:** Cyril Py <cyrpy1@slb.com>
**Subject:** Re: [Ext] Questions for Proposal


Cyril,


Did you receive the draft proposal I sent yesterday evening?


Can I answer any questions?


On Thu, Nov 2, 2017 at 11:23 AM, Cyril Py <cyrpy1@slb.com> wrote:

### Schlumberger-Private

Hi, Jim


There is a big leadership overlap between OS Digital and SAP: the partitioned roles are Soumya, Alfons, Bruno, Jason. All the rest is common.

There is almost no overlap on the work-done in parallel between OS Digital and SAP: more a dependency SAP => OS Digital project like GAC


Regards,

Cyril Py,

Schlumberger, ITE SAP PMO Manager

+1 **832 462 2784** Phone

**+1 713 456 9348** Mobile


**From:** Jim Damato [mailto:jim.damato@scruminc.com]
**Sent:** Thursday, November 02, 2017 10:06 AM
**To:** Cyril Py <cyrpy1@slb.com>
**Subject:** [Ext] Questions for Proposal

SLB_002071

Cyril,

I need some information for the next iteration of our proposal for you.

How much overlap is there between the <u>leadership</u> of the OS Digital group and the SAP Program?

Also, and separately, how much overlap is there in the <u>work done</u> between OS Digital group and the SAP Program?

More questions will probably come as I think of them.

--

--------------------------------------------------------------------------------

Jim Damato | Transformation Advisor

CS@S, CSP, CSM, CSPO, PMI-ACP, SA, CDA, PMP, ITIL

scruminc.

One Broadway | 14th floor | Cambridge, MA 02142

<u>401-864-8399</u> | <u>jim.damato@scruminc.com</u> | <u>LinkedIn</u> | <u>www.scruminc.com</u>

--

Jim Damato | Transformation Advisor

CS@S, CSP, CSM, CSPO, PMI-ACP, SA, CDA, PMP, ITIL

# scruminc.

One Broadway | 14th floor | Cambridge, MA 02142

401-864-8399 | jim.damato@scruminc.com | LinkedIn | www.scruminc.com

--

Jim Damato | Transformation Advisor

CS@S, CSP, CSM, CSPO, PMI-ACP, SA, CDA, PMP, ITIL

# scruminc.

One Broadway | 14th floor | Cambridge, MA 02142

401-864-8399 | jim.damato@scruminc.com | LinkedIn | www.scruminc.com

--

Jim Damato | Transformation Advisor
CS@S, CSP, CSM, CSPO, PMI-ACP, SA, CDA, PMP, ITIL
# scruminc.
One Broadway | 14th floor | Cambridge, MA 02142
401-864-8399 | jim.damato@scruminc.com | LinkedIn | www.scruminc.com

Message

| | |
|---|---|
| **From**: | Mercedes Moore [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=A3F1E64176D645129D3567C52C214460-MMOORE] |
| **Sent**: | 9/14/2017 5:29:24 PM |
| **To**: | support@scrumalliance.org |
| **Subject**: | Certified Scrum Master |

Hi. I recently took a 2-day Scrum Master course, facilitated by Scrum, Inc.  I took their online assessment for 'Licensed Scrum Master'; can I use this training toward a Scrum Alliance Certified ScrumMaster designation?

Thanks,
Mercedes Moore


--
Mercedes Moore
Contracts Specialist



501 S. 5th St. | Richmond, VA 23219
T 804.444.7104 | F 855.759.4793
mercedes.moore@westrock.com | www.westrock.com

WRPROD0000000292

Message

| | |
|---|---|
| **From**: | /o=exchangelabs/ou=exchange administrative group (fydibohf23spdlt)/cn=recipients/cn=5c7d678f572d488286a79beacccfcf22-ponwosu [/o=exchangelabs/ou=exchange administrative group (fydibohf23spdlt)/cn=recipients/cn=5c7d678f572d488286a79beacccfcf22-ponwosu] |
| **Sent**: | 9/20/2017 6:07:46 PM |
| **To**: | Kenny Cannon [kenny.cannon@westrock.com] |
| **Subject**: | RE: Module: Licensed Scrum Master Test completed |

I heard they are not, since you don't take the test to become certified with SCRUMinc. I would check to make sure CRUMinc is affliated with SCRUM Alliance.

**From:** Kenny Cannon
**Sent:** Wednesday, September 20, 2017 2:04 PM
**To:** Patience Nwosu <patience.nwosu@westrock.com>
**Subject:** RE: Module: Licensed Scrum Master Test completed

I guess Licensed and Certified is the same then.  I took a 2 day course via SCRUMinc.

**Kenny Cannon**
IT Manager – Windows Services System Administration



T 678.291.7993 | M 678.270.0889
**kenny.cannon@westrock.com** | www.westrock.com

**From:** Patience Nwosu
**Sent:** Wednesday, September 20, 2017 1:56 PM
**To:** Kenny Cannon <kenny.cannon@westrock.com>
**Subject:** RE: Module: Licensed Scrum Master Test completed

The certified version is one where after your attend a 2 day training you are registered with SCRUM Alliance and take the certification test. Once you pass that test, you become a Certified Scrum Master. Several Alliance affiliated companies offer the training. See here https://www.scrumalliance.org/certifications/certifications2017. The training company I went with is CollabNet. Found them on the Alliance site.

**From:** Kenny Cannon
**Sent:** Wednesday, September 20, 2017 9:33 AM
**To:** Patience Nwosu <patience.nwosu@westrock.com>
**Subject:** RE: Module: Licensed Scrum Master Test completed

I don't know.  How can I do the Certified version too?

**Kenny Cannon**
IT Manager – Windows Services System Administration



T 678.291.7993 | M 678.270.0889
**kenny.cannon@westrock.com** | www.westrock.com

**From:** Patience Nwosu
**Sent:** Wednesday, September 20, 2017 9:24 AM
**To:** Kenny Cannon <kenny.cannon@westrock.com>
**Subject:** RE: Module: Licensed Scrum Master Test completed

Congratulations! What is the difference between the Certified SCRUM Master (CSM) and the LSM?

**From:** Kenny Cannon
**Sent:** Wednesday, September 20, 2017 8:59 AM
**To:** Patience Nwosu <patience.nwosu@westrock.com>
**Subject:** FW: Module: Licensed Scrum Master Test completed

**Kenny Cannon**
IT Manager – Windows Services System Administration

T 678.291.7993 | M 678.270.0889
**kenny.cannon@westrock.com** | **www.westrock.com**

**From:** Scrum Inc. [mailto:system@litmos.com]
**Sent:** Wednesday, September 20, 2017 8:39 AM
**To:** Kenny Cannon <kenny.cannon@westrock.com>
**Subject:** Module: Licensed Scrum Master Test completed

| EXTERNAL |
|:---:|

Hello Kenny,

You have completed Module: Licensed Scrum Master Test on Scrum Inc.

**Licensed Scrum Master Test 93 %**

**Congratulations, you have passed the LSM test!  You are now a Licensed Scrum Master.**

WRPROD0000000414

| | |
|---|---|
| **Message** | |
| **From**: | James Cruickshanks [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=F1C00372A96F494693A9E402A41F5490-JCRUICKS1] |
| **Sent**: | 8/21/2017 4:15:03 PM |
| **To**: | Christine Morris [christine.morris@westrock.com] |
| **Subject**: | Re: SCRUM MasTraining - September 2017 |

After the workshop you will be given access to a link to sit the Licensed SCRUM Master exam, giving you a valid SCRUM Master certification. The coaches changed the certification body from the first course which is why it is described as Licensed SM rather than Certified. There is no difference otherwise. Majority of WestRock who took the course are Licensed.

Get Outlook for iOS

**From:** Christine Morris
**Sent:** Monday, August 21, 2017 12:10:37 PM
**To:** James Cruickshanks
**Subject:** RE: SCRUM MasTraining - September 2017

James, will this training meet the requirements for obtaining your CSM?

**Christine Morris, CSPO**
Service Management Analytics Lead

501 South 5th Street | Richmond, VA, 23219
T 804.444-5235 | M 804-980-5834

Christine.Morris@westrock.com | westrock.com

**From:** James Cruickshanks
**Sent:** Thursday, August 17, 2017 3:16 PM
**To:** David Neeck <david.neeck@westrock.com>; Robert Florimo <robert.florimo@westrock.com>; Christine Morris <christine.morris@westrock.com>; Matthew Dillard <matthew.dillard@westrock.com>; Philip Hulshizer <philip.hulshizer@westrock.com>; Keya Grant <k.grant@westrock.com>; Garry Weaver <garry.weaver@westrock.com>; Phillip Clayton <phillip.clayton@westrock.com>; Michelle Bishop <dmichelle.bishop@westrock.com>; David Harlow <david.harlow@westrock.com>; Justin McNew <justin.mcnew@westrock.com>; Omar Contreras <omar.contreras@westrock.com>; Derek Saulsberry <derek.saulsberry@westrock.com>; Kenneth Aburto <kenneth.aburto@westrock.com>; Kenny Cannon <kenny.cannon@westrock.com>; Gary Craig <gary.craig@westrock.com>; Ryan Sullivan <ryan.sullivan@westrock.com>; Allen Wakefield <allen.wakefield@westrock.com>; Matt Hooper <matt.hooper@westrock.com>; Jennifer Smoot <jennifer.smoot@westrock.com>; Jesse Pleasants <jesse.pleasants@westrock.com>; David Speidel <david.speidel@westrock.com>; Mark Piotrowski <mark.piotrowski@westrock.com>; Stephen Rosekrans <stephen.rosekrans@westrock.com>; Pat Charns <pat.charns@westrock.com>; Jason Goodrich <jason.goodrich@westrock.com>; Morgan Lasner <morgan.lasner@westrock.com>; Miguel Pastrana <miguel.pastrana@westrock.com>; Mercedes Moore <mercedes.moore@westrock.com>; Jack Parra <jack.parra@westrock.com>; Becca Sharpe <becca.sharpe@westrock.com>; Christopher Wagner <christopher.wagner@westrock.com>; Chris Lecrone <christopher.lecrone@westrock.com>; John Hillmer <john.hillmer@westrock.com>; Mark Scherer <mark.scherer@westrock.com>; Martha Rich <martha.rich@westrock.com>; Nathan Childs <nathan.childs@westrock.com>; Terry Martin <terry.martin@westrock.com>; Howard Lawrence <howard.lawrence@westrock.com>; Richard Pearce <richard.pearce@westrock.com>; Curtis Acree <curtis.acree@westrock.com>; Steven Silakowski

WRPROD0000000549

&lt;steve.silakowski@westrock.com&gt;; Drew McAlpin &lt;drew.mcalpin@westrock.com&gt;; Tom Dutton
&lt;tom.dutton@westrock.com&gt;
**Subject:** SCRUM MasTraining - September 2017

Thank you to those of you who have already registered for the SCRUM Master training in September. Your place is reserved for the dates you requested.

For those who have still to register we have only 7 seats available on workshop 1 and 6 seats on workshop two.

If you are still interested in attending please register by close of business tomorrow Friday 18th August. We will be opening up any remaining seats to other areas of the business as of Monday August 21st.

For those who have indicated the need for hotel rooms we are making a block booking at the Richmond Omni hotel and rooms will be reserved under your name. The rate is $137 per night and includes breakfast and wifi.

The workshop itself will be held at the Richmond office and is within walking distance of the hotel. Alternatively there is a shuttle service!

Look out for a meeting invitation to come your way at the beginning of next week.

James Cruickshanks

WRPROD0000000549

**#235713 Urgent Educational Verification-Confidential-Chandni Jain**

| | | |
|---|---|---|
| **Submitted** | **Received via** | **Requester** |
| October 5, 2020, 10:58 | Mail | Geetali Bombale <geetali.bombale@fadv.com> |

| **Status** | **Priority** | **Group** | | **Assignee** |
|---|---|---|---|---|
| Closed | - | Membership Services - Support | | Brandon Hogan |

| **Category** | **Issue Information** |
|---|---|
| Support | Education::General Questions::Other Scrum Organization |

---

**Geetali Bombale**  Oct 5, 10:58

Dear Sir/Madam,

First Advantage Private Ltd is Asia's leading pre-employment screening company. We are acting on behalf of our client in respect of the provision of Pre-Employment Screening Services.

Requesting you to verify the information provided by our prospective employees who claim to have qualified from your College.

Kindly revert back to me confirming the genuiness of the information provided as soon as possible.

The details are mentioned below:

Check id

Candidate Name

Qualification

Year of Passing

162591089

Chandni Jain

Licensed Scrum Master

2019(Date of Issue)

Have attached the document of the candidate.

Please confirm whether the above qualification is genuine or not as per your records. Along with the Name and Designation of the Official.

I would be most grateful if you could take a few minutes and send the response at the earliest.

Please contact me if you have any queries. Your input is greatly valued and your quick response will be much appreciated.

Thanking you in anticipation.

Geetali Bombale | Senior Operations Analyst

O: +91 022 40697231 | E: geetali.bombale@fadv.com

We Are Your First Advantage | www.fadv.com (applewebdata://9817104D-46C2-4330-BF95-0524A9726FB4/fadv.com)

For any feedback & 1st level of escalation please contact mustaqim.gholap@fadv.com

For 2nd level of escalation please contact sharon.dsouza@fadv.com

---

**Brandon Hogan**  Oct 5, 11:50              CONFIDENTIAL                    SAI.07.0022432

Hello Geetali,

Thank you for contacting Scrum Alliance®.

Apologies, but you are looking for Scrum Inc. We are not affiliated.

Please let me know if there's anything else I can help with!

Warm Regards,

Brandon Hogan
Technical Advisor

Scrum Alliance is AT YOUR SERVICE with resources and connection to LIVE ONLINE COURSES. Together, we are not alone.

Support Software by **Zendesk**

CONFIDENTIAL                                    SAI.07.0022433

**SI00005888-5890 FILED UNDER SEAL**

**SI00006392 FILED UNDER SEAL**

# SI00006409-6412 FILED UNDER SEAL

# SI00011106-11107 FILED UNDER SEAL