UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| SCRUM ALLIANCE, INC., | § § § | |
| PLAINTIFF, | § § | CIVIL ACTION NO. 4:20-CV-00227 |
| v. | § § § | JURY DEMANDED |
| SCRUM, INC., JEFF SUTHERLAND, and JJ SUTHERLAND, | § § § § | |
| DEFENDANTS. | § § | |

**PLAINTIFF'S SUR-REPLY TO DEFENDANTS' MOTION TO EXCLUDE
SURVEY EVIDENCE AND TESTIMONY OF DAVID FRANKLYN**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiff Scrum Alliance, Inc. ("SAI" or "Plaintiff") files this Sur-Reply to Scrum, Inc.'s ("SI"), Jeff Sutherland's, and JJ Sutherland's (together, the "Sutherlands" and, collectively with SI, "Defendants") Motion to Exclude Survey Evidence and Testimony of David Franklyn (the "Sur-Reply"), and would respectfully show the Court as follows:

## I.
## INTRODUCTION

In their late-filed reply brief (Dkt. 133)[1], Defendants fail to come up with any new compelling facts or arguments, instead simply re-urging the stale and unpersuasive logic set forth in their Motion to Strike. Moreover, Defendants overlook or completely ignore (1) Defendants' own deposition testimony demonstrating that Professor Franklyn's survey participants were within the universe of Defendants' prospective customers, (2) the true nature of the project management framework marketplace, where consumers often consider Scrum along with other frameworks in making purchasing decisions, and (3) the numerous cases of actual confusion that corroborate Professor Franklyn's survey and results. The Court should deny Defendants' Motion to Strike (Dkt. 116), as the evidence and testimony in this case demonstrates that Professor Franklyn's survey was proper, reliable, and would assist the jury in understanding facts at issue.

## II.
## ARGUMENT AND AUTHORITIES

**1. Based on the Testimony of Scrum Inc.'s Founder, Prof. Franklyn's Survey Participants Were Within the Universe. (In Response to Reply at 1-2)**

Defendants criticize Professor Franklyn's survey by arguing that the universe of respondents was "far too broad." (Dkt. 133, p. 2). Defendants' objection is that the respondents

---

[1] Per Local Rule CV 7(f), Defendants' Reply was due on December 7, 2020, seven days after SAI filed its November 30, 2020 Response Brief (Dkt. 125). Instead, Dkt. 133 was filed December 8, 2020.

did not have to specifically know what the Scrum project management framework was in order to qualify for the survey. That is because, Defendants argue, respondents who are unfamiliar with Scrum specifically are not Defendants' potential purchasers.

But this argument is directly at odds with the November 17, 2020 deposition testimony of Jeff Sutherland, SI's founder and Chairman of the Board. Dr. Sutherland was asked how he would describe his company's potential customers:

> Q. And how would you describe Scrum, Inc.'s potential customers?
>
> A. Scrum, Inc.'s potential customer are any organization in the world that wants to increase its capabilities and be more successful.

*See* Oates Decl., Exhibit A, Jeff Sutherland Dep. 61:21-25. Dr. Sutherland does not limit the universe of potential customers to only those individuals who know of Scrum training specifically. To the contrary, Dr. Sutherland testifies that Scrum, Inc.'s universe of potential customers is anyone who wants to increase their capabilities and be more successful. That is a much *broader* universe than was tested in Prof. Franklyn's survey.

### 2. The Project Management Framework Marketplace Validates the Survey. (In Response to Reply at 2)

Defendants also make the unsupported assertion that a "consumer searching for any other project management training (such as Six Sigma, or the Project Management Institute's PMP training) would not be aware of important distinctions" between those frameworks and Scrum such that they would not be appropriate to include in the survey universe. (*See* Dkt. 133, p. 2). Yet, the evidence actually demonstrates the opposite: there are numerous websites and platforms designed for individuals interested in project management certifications that include treatment of a host of project management accreditation programs – both Scrum and non-Scrum. *See* Oates Decl.,

Exhibits B and C. Those websites compare and contrast the various project management frameworks and certifications for the consumer. A person could very well have never heard of Scrum, but have studied information related to various project management frameworks and decided to obtain a Scrum credential. *See id*. For example, one website included Certified ScrumMaster and the two programs that served as the controls Prof. Franklyn used, Project Management Professional and CompTIA Project+; and then proceeds to explain them in detail for consumers trying to select between accreditations:

**The 17 Best Project Management Certifications of 2020:**

- Project Management Professional (PMP)
- Certified Associate in Project Management (CAPM)
- Certified ScrumMaster (CSM)
- CompTIA Project+
- Agile Certified Practitioner (ACP)
- PRINCE2
- Certified Project Director (CPD)
- Certified Project Manager–IAPM
- Professional in Project Management (PPM)
- Master Project Manager (MPM)
- Associate in Project Management (APM)
- Certified Project Management Practitioner (CPMP)

Oates Decl, Ex. B. That contradicts Defendants' bald claim that a person must specifically be familiar with Scrum in order to be a potential customer, and supports Prof. Franklyn's use of the two controls he selected. Professor Franklyn's universe was *under* inclusive of Defendants' admitted potential customer base; and he ensured that the universe was appropriate because he required that respondents had previously completed, or were considering completing a certification course for a project framework within the next twelve months, and had knowledge of at least two project management framework platforms. (*See* Dkt. 125, p. 9).

### 3. Professor Franklyn's Controls Were Appropriate, and Defendants Urge the Court To Ignore the Damaging Evidence of Actual Confusion that Corroborates Prof. Franklyn's Survey. (In Response to Reply at 3, 5)

Defendants want the Court to ignore the numerous instances of actual evidence of confusion attached to Prof. Franklyn's declaration that materially corroborate the validity and conclusions of Prof. Franklyn's survey. Notably, real world confusion exists, which significantly undercuts all of Defendants' criticisms with respect to the survey and demonstrate that the survey's data is in fact reliable.

Instead, Defendants continue to attack the survey's control by pointing out that other controls could have been chosen, such as "professional scrum master" or "preferred scrum master." (*See* Dkt. 133, p. 5). Defendants do not dispute that a hallmark principal of selecting a proper control is to ensure that the control itself is not infringing. Prof. Franklyn testified that he focused on this principle when selecting the controls used in the survey and he was concerned that using a synonym for "certified" or another like word in front of "scrum master," would have yielded an infringing control. (*See* Dkt. 125, p. 14). That legitimate concern demonstrates that Prof. Franklyn's control was suitable; and exclusion of Dr. Franklyn's survey is not warranted if his controls simply were not the "most" suitable. *See e.g., Gucci America, Inc. v. Guess?, Inc*., 831 F. Supp. 2d 723, 740, 102 U.S.P.Q.2d 1225 (S.D. N.Y. 2011), on reconsideration in part, 102 U.S.P.Q.2d 1245, 2011 WL 6326032 (S.D. N.Y. 2011) ("[W]hile the fact that a survey used a control that could have been 'stronger' or 'better' may mean it is entitled to less weight, it does not mean that the survey does not provide relevant information.").

### 4. Defendants' Other Arguments Do Not Warrant Exclusion. (In Response to Reply at 2-3, 4-5)

Defendants have not cited any authorities for the proposition that Prof. Franklyn's specific survey questions created any demand effect. Instead, Defendants just repeatedly cite authorities

for the proposition that demand effects in general are improper. *See generally*, Dkt 116, 133. That is because here, the survey's questions simply asked respondents to answer in the affirmative or in the negative without any hint as to what the survey was looking for. That does not create a demand effect. *See vonRosenberg v. Lawrence*, 413 F.Supp.3d 437, 457 (D.S.C. 2019) (discussing a survey designed by Mr. Sowers' boss, Robert Klein, and finding that there were no demand effects because "The question explicitly provides two possibilities, 'do you or do you not,' negating any possible demand effect as the question points toward neither yes nor no.").

Further, Defendants have not shown that Prof. Franklyn's overall coding is irrational or unsupported. Instead, they simply cherry-pick a few coding responses that they believe were "vague" and, Defendants argue, are incapable of demonstrating the source of the respondents' confusion. (*See* Dkt. 133, pp. 5-6). Even assuming Defendants' argument with respect to coding has some merit (it does not), that type of attack does not suffice to exclude Prof. Franklyn's report. *See e.g.*, *vonRosenberg*, 413 F.Supp.3d at 458 (noting some valid critiques to Mr. Sowers' boss' survey but due to the fact that the coding overall is rational finds that the criticism "is the type of issue that goes to weight but would not, and cannot, be used to exclude [his] report."); *see also Gucci Am., Inc.*, 831 F. Supp. 2d at 741 ("Clearly, a survey in which all respondents explained their conclusions in this idealized manner would be preferable to one in which few or no respondents did so. It is equally clear, however, that expecting survey respondents to be able to parse their thought processes with such a high degree of specificity in response to an open-ended "why-do-you-say-that" question is unrealistic.")

### III.
### CONCLUSION

WHEREFORE, Plaintiff requests that the Court deny Defendants' Motion to Exclude Survey Evidence and Testimony of David Franklyn.

          Respectfully submitted,

          JACKSON WALKER LLP

By: */s/ Charles L. Babcock*
Charles L. Babcock
Texas State Bar No. 01479500
cbabcock@jw.com
David Folsom
Texas State Bar No. 7210800
dfolsom@jw.com
Brian H. Oates
Texas State Bar No. 24088144
boates@jw.com
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
(214) 953-6000 – Phone
(214) 953-5822 – Fax

Joel R. Glover
Texas State Bar No. 24087593
jglover@jw.com
1401 McKinney Street, Suite 1900
Houston, Texas 77010
(713) 752-4200 – Phone
(713) 752-4221 – Fax

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

    I hereby certify that on December 15, 2020, I caused a copy of the foregoing pleading to be served upon counsel of record for all parties vial the Court's ECF system.

          /s/ Charles L. Babcock
          Charles L. Babcock

27635826v.3