# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| SCRUM ALLIANCE, INC., | § | |
| | § | |
| *Plaintiff*, | § | Civil Action No. 4:20-cv-227 |
| | § | Judge Mazzant |
| v. | § | |
| | § | |
| SCRUM, INC., JEFF SUTHERLAND, | § | |
| and JJ SUTHERLAND, | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Motion to Exclude Survey Evidence and Testimony of David Franklyn (Dkt. #116). Having considered the Motion and the relevant pleadings, the Court finds the Motion should be denied.

## BACKGROUND

This case arises out of Plaintiff's allegations that Defendants used Plaintiff's trademarks without authorization to create a competing line of certification courses that teach the Scrum framework. Defendants deny these allegations. On November 16, 2020, Defendants filed their Motion to Exclude Survey Evidence and Testimony of David Franklyn (Dkt. #116), currently before the Court. On November 30, 2020, Plaintiff filed its response (Dkt. #125). On December 8, 2020, Defendants filed their reply (Dkt. #133). And on December 15, 2020, Plaintiff filed its sur-reply (Dkt. #137).

## LEGAL STANDARD

"The Federal Rules of Evidence permit the use of expert testimony when such testimony will assist the trier of fact to understand the evidence or to determine a fact in issue." *Gen. Star Indem. Co. v. Sherry Brooke Revocable Tr.*, 243 F. Supp. 2d 605, 623 (W.D. Tex. 2001) (citing

FED. R. EVID. 702). But "prior to admitting expert testimony, 'district courts must be assured that the proffered witness is qualified to testify by virtue of his knowledge, skill, experience, training, or education.'" *Taylor Pipeline Const., Inc. v. Directional Rd. Boring, Inc.*, 438 F. Supp. 2d 696, 705 (E.D. Tex. 2006) (cleaned up) (quoting *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)); *see Balfour Beatty Rail, Inc. v. Kan. City S. Ry. Co.*, 173 F. Supp. 3d 363, 408 (N.D. Tex. 2016) ("District courts are assigned a gatekeeping role to determine the admissibility of expert testimony." (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592–98 (1993))). Courts act as gatekeepers "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

Courts review the admissibility of expert opinions under the framework the Supreme Court set out in *Daubert*. *Sandifer v. Hoyt Archery, Inc.*, 907 F.3d 802, 807 (5th Cir. 2018). The party offering an expert's testimony must prove "(1) the expert is qualified, (2) the evidence is relevant to the suit, and (3) the evidence is reliable." *Hall Arts Ctr. Office, LLC v. Hanover Ins. Co.*, 327 F. Supp. 3d 979, 1001 (N.D. Tex. 2018) (citing *Kumho*, 526 U.S. at 147). "A proffered expert witness is qualified to testify by virtue of his or her 'knowledge, skill, experience, training, or education.'" *Little v. Tech. Specialty Prods., LLC*, 940 F. Supp. 2d 460, 467 (E.D. Tex. 2013) (quoting FED. R. EVID. 702). "[E]xpert testimony is admissible only if it is both relevant and reliable." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002); *see Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) ("It goes without saying that *Daubert* clarified a district court's gate-keeping function: the court must ensure the expert uses reliable methods to reach his opinions; and those opinions must be relevant to the facts of the case."). "This gate-keeping

obligation applies to all types of expert testimony, not just scientific testimony." *Kuhmo*, 526 U.S. at 147.

"Critically, the party offering expert testimony 'must prove by a preponderance of the evidence that the testimony is reliable,' not that it is correct." *Swanston v. City of Plano, Tex.*, No. 4:19-CV-412, 2021 WL 327588, at *2 (E.D. Tex. Feb. 1, 2021) (quoting *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998)). The role of district courts at this juncture is to ensure relevance and reliability, not accuracy. *See Watkins v. Telsmith, Inc.*, 121 F.3d 984, 991 (5th Cir. 1997) (explaining the district courts' role under *Daubert* is deciding "whether the expert is a hired gun or a person whose opinion in the courtroom will withstand the same scrutiny that it would among his professional peers"). It is imperative for district courts to bear in mind that the *Daubert* regime does not enlist judges "as a replacement for the adversary system." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir. 1996); *see Dearmond v. Wal–Mart La. LLC*, 335 F. App'x 442, 444 (5th Cir. 2009) ("Cross-examination at trial . . . is the proper forum for discrediting testimony, and credibility determinations are, of course, the province of the jury.").

Courts consider the factors put forward by the *Daubert* Court to help assess the reliability of expert testimony:

> (1) whether the theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review; (3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the technique's operation; and (4) whether the theory or method has been generally accepted by the scientific community.

*SEC v. Life Partners Holdings, Inc.*, 854 F.3d 765, 775 n.4 (5th Cir. 2017) (citing *Pipitone*, 288 F.3d at 244). "When evaluating *Daubert* challenges, courts focus 'on the experts' principles and methodology, not on the conclusions that the experts generate.'" *Mobility Workx, LLC v. Cellco*

*P'ship*, No. 4:17-CV-00872, 2019 WL 5721814, at *3 (E.D. Tex. Nov. 5, 2019) (brackets omitted) (quoting *Daubert*, 509 U.S. at 595).

The *Daubert* factors are "non-exclusive and 'do not constitute a definitive checklist or test.'" *United States v. Norris*, 217 F.3d 262, 269 (5th Cir. 2000) (quoting *Kumho*, 526 U.S. at 150). This inquiry is a "flexible one," allowing district courts "to identify the most germane considerations." *Roman v. W. Mfg., Inc.*, 691 F.3d 686, 692 (5th Cir. 2012) (citing *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010)); *see Kumar v. Frisco Indep. Sch. Dist.*, No. 4:19-CV-00284, 2020 WL 4464502, at *19 (E.D. Tex. Aug. 4, 2020) ("The test for determining reliability can adapt to the particular circumstances underlying the testimony at issue." (citing *Kumho*, 526 U.S. at 152)). Nevertheless, "caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule." FED. R. EVID. 702 advisory committee's note to 2000 amendment. Whether to allow or exclude expert testimony is committed to the sound discretion of district courts, *St. Martin v. Mobil Expl. & Producing U.S. Inc.*, 224 F.3d 402, 405 (5th Cir. 2000), and such decisions will be overturned only if a district court commits an abuse of discretion, *Sims v. Kia Motors of Am., Inc.*, 839 F.3d 393, 400 (5th Cir. 2016).

## ANALYSIS

In the Motion, Defendants ask the Court to exclude the testimony of Plaintiff's expert, David Franklyn ("Franklyn"), and any evidence related to the survey Franklyn conducted for Plaintiff because "the survey is fundamentally flawed in its design and interpretation" (Dkt. #116 at p. 6). Defendants specifically articulate four issues with Franklyn's survey warranting exclusion at trial: (1) Franklyn did not properly define or screen the survey's universe; (2) Franklyn's attempt to screen respondents introduced demand effects to the survey; (3) the survey is structurally flawed on account of improper control stimuli; and (4) Franklyn's coding of open-ended survey questions

4

incorrectly interprets the survey's results (Dkt. #116 at pp. 10–11). Plaintiff disagrees as to each criticism of Franklyn's survey and maintains that the survey remains admissible (Dkt. #125 at pp. 8–9).

As with other expert evidence, surveys are subject to *Daubert* scrutiny. *i4i Ltd. P'ship v. Microsoft Corp.*, 670 F. Supp. 2d 568, 589 (E.D. Tex. 2009). Even so, "[f]laws in a survey generally bear on weight, not admissibility." *Shell Trademark Mgmt. B.V. v. Warren Unilube, Inc.*, 765 F. Supp. 2d 884, 890 (S.D. Tex. 2011); *see Maxell, Ltd. v. Apple Inc.*, No. 5:19-CV-00036-RWS, 2020 WL 8269548, at *17 (E.D. Tex. Nov. 11, 2020) ("The fact that an expert's survey may be imperfect or conducted in an alternative fashion does not automatically render the survey unreliable or its methodology so flawed as to permit its exclusion under *Daubert*."). "For a survey to be valid, 'the persons interviewed must adequately represent the opinions which are relevant to the litigation.'" *Mini Melts, Inc. v. Reckitt Benckiser, Inc.*, No. 4:07-CV-271, 2009 WL 10677599, at *6 (E.D. Tex. Feb. 26, 2009) (quoting *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 264 (5th Cir. 1980)).

Evaluating the validity of surveys under *Daubert* involves two criteria: (1) "the adequacy of the [survey] universe," and (2) "the format of the questioning." *Exxon Corp. v. Tex. Motor Exch. of Hous., Inc.*, 628 F.2d 500, 506–07 (5th Cir. 1980). As long as a survey suffers from nothing more than "minor methodological flaws," the survey will survive *Daubert*, as these imperfections go to "weight rather than admissibility." *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 488 (5th Cir. 2004). But if "'serious flaws in a survey will make any reliance on that survey unreasonable' and 'no reasonable jury could view the proffered survey as evidence of confusion among relevant consumers,'" then that survey is inadmissible. *RE/MAX Int'l, Inc. v. Trendsetter Realty, LLC*, 655 F. Supp. 2d 679, 705 (S.D. Tex. 2009) (brackets omitted) (quoting

*Scott Fetzer Co.*, 381 F.3d at 488). Absent such fatal errors, "any survey, no matter how tendentious, would force the parties to trial." *Scott Fetzer Co.*, 381 F.3d at 488.

After reviewing the pleadings and arguments of counsel, the four purported errors Defendants identify in the Motion "relat[e] to the bases and sources of [the] expert's opinion," which go to "the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987). Courts have previously found each of the critiques Defendants levy against Franklyn's survey to bear solely on the weight afforded to a survey, not its admissibility. *See, e.g.*, *Firebirds Int'l, LLC v. Firebird Rest. Grp., LLC*, No. 3:17-CV-2719-B, 2019 WL 3957846, at *3 (N.D. Tex. Aug. 21, 2019) (survey universe); *In re Motor Fuel Temperature Sales Practices Litig.*, No. 07-1840-KHV, 2012 WL 13050523, at *7 (D. Kan. Feb. 29, 2012) (demand effects); *Spangler Candy Co. v. Tootsie Roll Indus., LLC*, 372 F. Supp. 3d 588, 598 (N.D. Ohio 2019) (improper control); *Gucci Am., Inc. v. Guess?, Inc.*, 831 F. Supp. 2d 723, 741 (S.D.N.Y. 2011) (answer coding). Therefore, the Court finds that Franklyn's testimony and any evidence related to his survey should not be excluded.

## CONCLUSION

It is therefore **ORDERED** that Defendants' Motion to Exclude Survey Evidence and Testimony of David Franklyn (Dkt. #116) is **DENIED**.

**SIGNED this 29th day of April, 2021.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE