# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| SCRUM ALLIANCE, INC., | § | |
| | § | |
| *Plaintiff*, | § | Civil Action No. 4:20-cv-227 |
| | § | Judge Mazzant |
| v. | § | |
| | § | |
| SCRUM, INC., JEFF SUTHERLAND, | § | |
| and JJ SUTHERLAND, | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff's Motion to Exclude Proposed Expert Testimony from Jaime D'Almeida (Dkt. #134). Having considered the Motion and the relevant pleadings, the Court finds the Motion should be denied.

## BACKGROUND

This case arises out of Plaintiff's allegations that Defendants used Plaintiff's trademarks without authorization to create a competing line of certification courses that teach the Scrum framework. Defendants deny these allegations. On December 11, 2020, Plaintiff filed its Motion to Exclude Proposed Expert Testimony from Jaime D'Almeida (Dkt. #134), currently before the Court. On December 23, 2020, Defendants filed their response (Dkt. #139). On December 30, 2020, Plaintiff filed its reply (Dkt. #141). And on January 6, 2021, Defendants filed their sur-reply (Dkt. #142).

## LEGAL STANDARD

"The Federal Rules of Evidence permit the use of expert testimony when such testimony will assist the trier of fact to understand the evidence or to determine a fact in issue." *Gen. Star Indem. Co. v. Sherry Brooke Revocable Tr.*, 243 F. Supp. 2d 605, 623 (W.D. Tex. 2001) (citing

FED. R. EVID. 702). But "prior to admitting expert testimony, 'district courts must be assured that the proffered witness is qualified to testify by virtue of his knowledge, skill, experience, training, or education.'" *Taylor Pipeline Const., Inc. v. Directional Rd. Boring, Inc.*, 438 F. Supp. 2d 696, 705 (E.D. Tex. 2006) (cleaned up) (quoting *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)); *see Balfour Beatty Rail, Inc. v. Kan. City S. Ry. Co.*, 173 F. Supp. 3d 363, 408 (N.D. Tex. 2016) ("District courts are assigned a gatekeeping role to determine the admissibility of expert testimony." (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592–98 (1993))). Courts act as gatekeepers "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

Courts review the admissibility of expert opinions under the framework the Supreme Court set out in *Daubert*. *Sandifer v. Hoyt Archery, Inc.*, 907 F.3d 802, 807 (5th Cir. 2018). The party offering an expert's testimony must prove "(1) the expert is qualified, (2) the evidence is relevant to the suit, and (3) the evidence is reliable." *Hall Arts Ctr. Office, LLC v. Hanover Ins. Co.*, 327 F. Supp. 3d 979, 1001 (N.D. Tex. 2018) (citing *Kumho*, 526 U.S. at 147). "A proffered expert witness is qualified to testify by virtue of his or her 'knowledge, skill, experience, training, or education.'" *Little v. Tech. Specialty Prods., LLC*, 940 F. Supp. 2d 460, 467 (E.D. Tex. 2013) (quoting FED. R. EVID. 702). "[E]xpert testimony is admissible only if it is both relevant and reliable." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002); *see Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) ("It goes without saying that *Daubert* clarified a district court's gate-keeping function: the court must ensure the expert uses reliable methods to reach his opinions; and those opinions must be relevant to the facts of the case."). "This gate-keeping

obligation applies to all types of expert testimony, not just scientific testimony." *Kuhmo*, 526 U.S. at 147.

"Critically, the party offering expert testimony 'must prove by a preponderance of the evidence that the testimony is reliable,' not that it is correct." *Swanston v. City of Plano, Tex.*, No. 4:19-CV-412, 2021 WL 327588, at *2 (E.D. Tex. Feb. 1, 2021) (quoting *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998)). "The role of district courts at this juncture is to ensure relevance and reliability, not accuracy." *Scrum All., Inc. v. Scrum, Inc.*, No. 4:20-CV-227, 2021 WL 1691136, at *2 (E.D. Tex. Apr. 29, 2021); *see Watkins v. Telsmith, Inc.*, 121 F.3d 984, 991 (5th Cir. 1997) (explaining the district courts' role under *Daubert* is deciding "whether the expert is a hired gun or a person whose opinion in the courtroom will withstand the same scrutiny that it would among his professional peers"). It is imperative for district courts to bear in mind that the *Daubert* regime does not enlist judges "as a replacement for the adversary system." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir. 1996); *see Dearmond v. Wal–Mart La. LLC*, 335 F. App'x 442, 444 (5th Cir. 2009) ("Cross-examination at trial . . . is the proper forum for discrediting testimony, and credibility determinations are, of course, the province of the jury.").

Courts consider the factors put forward by the *Daubert* Court to help assess the reliability of expert testimony:

> (1) whether the theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review; (3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the technique's operation; and (4) whether the theory or method has been generally accepted by the scientific community.

*SEC v. Life Partners Holdings, Inc.*, 854 F.3d 765, 775 n.4 (5th Cir. 2017) (citing *Pipitone*, 288 F.3d at 244). "When evaluating *Daubert* challenges, courts focus 'on the experts' principles and methodology, not on the conclusions that the experts generate.'" *Mobility Workx, LLC v. Cellco*

*P'ship*, No. 4:17-CV-00872, 2019 WL 5721814, at *3 (E.D. Tex. Nov. 5, 2019) (brackets omitted) (quoting *Daubert*, 509 U.S. at 595).

The *Daubert* factors are "non-exclusive and 'do not constitute a definitive checklist or test.'" *United States v. Norris*, 217 F.3d 262, 269 (5th Cir. 2000) (quoting *Kumho*, 526 U.S. at 150). This inquiry is a "flexible one," allowing district courts "to identify the most germane considerations." *Roman v. W. Mfg., Inc.*, 691 F.3d 686, 692 (5th Cir. 2012) (citing *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010)); *see Kumar v. Frisco Indep. Sch. Dist.*, No. 4:19-CV-00284, 2020 WL 4464502, at *19 (E.D. Tex. Aug. 4, 2020) ("The test for determining reliability can adapt to the particular circumstances underlying the testimony at issue." (citing *Kumho*, 526 U.S. at 152)). Nevertheless, "caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule." FED. R. EVID. 702 advisory committee's note to 2000 amendment. Whether to allow or exclude expert testimony is committed to the sound discretion of district courts, *St. Martin v. Mobil Expl. & Producing U.S. Inc.*, 224 F.3d 402, 405 (5th Cir. 2000), and such decisions will be overturned only if a district court commits an abuse of discretion, *Sims v. Kia Motors of Am., Inc.*, 839 F.3d 393, 400 (5th Cir. 2016).

## ANALYSIS

In the Motion, Plaintiff primarily argues that d'Almeida "did not conduct an independent analysis or do anything to study or verify the facts or data that form the basis of his expert opinion" (Dkt. #134 at p. 4). Plaintiff supports this claim by pointing out specific flaws in d'Almeida's report that purportedly warrant exclusion under *Daubert* (*see* Dkt. #134 at pp. 4–8). "In short," Plaintiff explains, "Mr. d'Almeida's expert report is merely a synthesis of Defendant's positions and an attempt to present them summarily as an expert opinion" (Dkt. #134 at p. 8).

4

In response, Defendants maintain that Plaintiff has "take[n] out-of-context snippets of Mr. d'Almeida's deposition testimony regarding the sources of data for discrete issues in his report" and "seek[s] the exclusion of the entirety of Mr. d'Almeida's proposed testimony" on this basis (Dkt. #139 at p. 5). At best, Defendants argue, Plaintiff's criticisms "go to the underlying facts upon which Mr. d'Almeida's opinions are based, which can and should be explored on cross-examination"—just not in a motion to exclude under *Daubert* (Dkt. #139 at p. 5). Further, Defendants posit that Plaintiff's requested relief of excluding d'Almeida's testimony is "overreaching," as Plaintiff's critiques "have no impact on the remainder of Mr. d'Almeida's conclusions" (Dkt. #139 at p. 5).

After reviewing the pleadings and arguments of counsel, the Court ultimately agrees with Defendants—Plaintiff can address its issues with d'Almeida's testimony on cross-examination because Plaintiff's challenges go to the weight of d'Almeida's testimony, not its admissibility. "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *United States v. Hodge*, 933 F.3d 468, 478 (5th Cir. 2019) (internal quotation marks omitted) (quoting *14.38 Acres of Land*, 80 F.3d at 1077), *cert. denied*, 141 S. Ct. 131 (2020). As such, rooting out questionable evidence via cross-examination is best achieved through "the adversarial system, not the court." *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004); *see Fox ex rel. Fox v. Elk Run Coal Co., Inc.*, 739 F.3d 131, 137 (4th Cir. 2014) ("A party relying on weak evidence to sustain its case runs the risk that its experts will crumble upon cross-examination or otherwise be impeached by the opposing party."). Rule 702 instructs courts to limit their function as evidentiary gatekeepers "to ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue so that it is appropriate for the jury's

consideration," and not, as some might have it, to "weigh[ing] . . . expert testimony to the point of supplanting the jury's fact-finding role." *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 294 (5th Cir. 2019).

Plaintiff's overarching criticism of d'Almeida's testimony is that "it is founded on unreliable and unverified data" (Dkt. #134 at p. 1). But even if such is the case, "the 'conventional devices' of 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof'" are at Plaintiff's disposal to challenge d'Almeida's testimony. *Williams v. Manitowoc Cranes, L.L.C.*, 898 F.3d 607, 624 (5th Cir. 2018) (quoting *Daubert*, 509 U.S. at 596). Courts focus their analysis exclusively on the "principles and methodology" experts use, not "the conclusions that they generate." *Daubert*, 509 U.S. at 595. The task for courts is not to determine that "[an] expert's testimony is correct," but rather that "the testimony is *reliable*." *Moore*, 151 F.3d at 276 (emphasis added). And if d'Almeida's testimony is as incorrect and untethered to the facts as Plaintiff purports, "then 'vigorous cross examination' will reveal that." *Mobility Workx*, 2019 WL 5721814, at *8.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff's Motion to Exclude Proposed Expert Testimony from Jaime D'Almeida (Dkt. #134) is **DENIED**.

**SIGNED** this 30th day of April, 2021.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE