# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| SCRUM ALLIANCE, INC., | § | |
| | § | |
| *Plaintiff,* | § | Civil Action No. 4:20-CV-227 |
| | § | Judge Mazzant |
| v. | § | |
| | § | |
| SCRUM, INC., JEFF SUTHERLAND, | § | |
| and JJ SUTHERLAND, | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION & ORDER

Pending before the Court is Defendant Scrum, Inc.'s Motion to Provide Clarification (Dkt. #174). Having considered the relevant pleadings, the Court clarifies its previous orders below.

## BACKGROUND

A more thorough factual background can be found in the Court's July 16, 2020 Memorandum Opinion and Order. *See Scrum All., Inc. v. Scrum, Inc.*, No. 4:20-CV-00227, 2020 WL 4016110, at *1–2 (E.D. Tex. July 16, 2020). Briefly, this case arises out of Scrum Alliance, Inc.'s ("SAI") allegations that Scrum, Inc. used SAI's trademarks without authorization to create a competing line of certification courses that teaches the Scrum framework. Scrum, Inc. denies these allegations.

The immediate motion concerns two orders issued by the Court: Dkt. #153 and Dkt. #154. In Dkt. #153, the Court found that the breach-of-contract claim SAI alleges against the Sutherlands is subject to a forum-selection clause, proceeded to sever that claim from the immediate action, and transfer the breach-of-contract claim to the United States District Court for the District of Colorado in accordance with the applicable forum-selection clause. *Scrum All., Inc. v. Scrum, Inc.*,

No. 4:20-CV-227, 2021 WL 798310, at *3–5 (E.D. Tex. Feb. 26, 2021). In Dkt. #154, the Court held that Scrum, Inc.'s argument that the Scheduling Order should be amended since a dispositive motion had been pending was without merit, and then proceeded to make minor adjustments to the Scheduling Order moving forward (Dkt. #154 at pp. 1–2). Scrum, Inc. seeks clarification as to the meaning and effect of these two orders (Dkt. #174 at pp. 1–3).

On March 12, 2021, Scrum, Inc. filed its Motion to Provide Clarification (Dkt. #174), currently before the Court. On March 19, 2021, SAI filed its response (Dkt. #181). On March 26, 2021, Scrum, Inc. filed its reply (Dkt. #189). And on March 31, 2021, SAI filed its sur-reply (Dkt. #207).

**ANALYSIS**

In the Motion, Scrum, Inc. requests that the Court clarify the orders found at Dkt. #153 and Dkt. #154. Because the Court has since permitted Scrum, Inc. to file an answer to SAI's operative complaint (*see* Dkts. #219–20), the Court only addresses Dkt. #153.

Scrum, Inc. seeks further information as to the status of two arguments it has previously advanced: (1) whether venue is proper in the Eastern District of Texas under Federal Rule of Civil Procedure 12(b)(3), and (2) whether the case should be transferred elsewhere under 28 U.S.C. § 1404(a). This second position has two strands, one regarding a forum-selection clause and the other concerning the standard § 1404(a) analysis. The Court addresses each matter in turn.

I.   **Rule 12(b)(3)**

   a. **Legal Standard**

The federal statute generally governing venue provides that "[a] civil action may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located [or] (2) a judicial district in which a substantial part of the

events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(1), (2). Only "if there is no district in which an action may otherwise be brought as provided in" § 1391 may a plaintiff pursue claims in a judicial district "in which any defendant is subject to the court's personal jurisdiction with respect to such action." *Id.* § 1391(b)(3).

A party may move to dismiss an action based on improper venue. FED. R. CIV. P. 12(b)(3). "Once challenged, the burden of sustaining venue lies with the plaintiff." *Gutierrez v. Drill Cuttings Disposal Co., L.L.C.*, 319 F. Supp. 3d 856, 861 (W.D. Tex. 2018); *see Umphress v. Hall*, 479 F. Supp. 3d 344, 348 (N.D. Tex. 2020). "On a Rule 12(b)(3) motion to dismiss for improper venue, the [C]ourt must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir. 2007) (per curiam). "In determining whether venue is proper, 'the Court may look beyond the complaint to evidence submitted by the parties.'" *Jerger v. D&M Leasing Dall.*, No. 4:20-CV-00309, 2020 WL 4335733, at *2 (E.D. Tex. July 28, 2020) (quoting *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009)).

"The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Before dismissing a case for lack of proper venue, a district court should consider whether the "interest of justice" standard warrants transfer. *See Maley v. Design Benefits Plan, Inc.*, 125 F. Supp. 2d 836, 838–39 (E.D. Tex. 2000).

If a mistake is made because of uncertainty as to proper venue, Congress, in enacting § 1406(a), recognized that the "interest of justice" may require a complaint to be transferred rather

3

than dismissed as to protect plaintiffs from "time consuming and justice defeating technicalities." *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962) (quoting *Internatio-Rotterdam, Inc. v. Thomsen*, 218 F.2d 514, 517 (4th Cir. 1955)). The decision to dismiss or transfer lies within the sound discretion of the district court. *Dubin v. United States*, 380 F.2d 813, 815 (5th Cir. 1967), *superseded by statute on other grounds as stated in Franco v. Mabe Trucking Co.*, 991 F.3d 616 (5th Cir. 2021).

b. **Analysis**

Scrum, Inc. offers two arguments explaining why this district is an improper venue for this action: (1) SAI has offered only conclusory allegations as to acts giving rise to the immediate claims, and (2) the substantial part of the events giving rise to SAI's claims did not occur in the Eastern District of Texas (*see* Dkt. #107 at pp. 19–21). Neither argument is persuasive.

First, without a doubt, SAI has alleged sufficient information that supports the viability of the claims brought. *See Charles v. SBC Disability Income Plan*, No. 6:05-CV-006-C, 2005 WL 8159403, at *2 (N.D. Tex. Sept. 19, 2005) (explaining that "once a defendant challenges venue, conclusory allegations, speculation, and unsubstantiated assertions cannot be used to establish proper venue"). In its Second Amended Complaint, SAI details specific, concrete instances in which Scrum, Inc., using the marks at issue in this litigation, offered certification courses in the Eastern District of Texas, both physically and virtually (Dkt. #87 at pp. 7–8, 10–11). Contrary to Scrum, Inc.'s assertion, these allegations are more than adequate to demonstrate that the Eastern District of Texas is a proper venue for the immediate action.

Scrum, Inc.'s other venue argument is misguided as well. "Courts uniformly agree the proper venue for a trademark infringement case lies where the infringing activity, or the 'passing off' occurred." *Hopdoddy Burger Bar Inc. v. Blacketer*, No. 1-15-CV-233 RP, 2015 WL 4624644,

at *2 (W.D. Tex. July 31, 2015); *accord Thirsty Mule Winery, L.L.C. v. Wild Wild W., L.L.C.*, No. 6:19-CV-00041-ADA, 2019 WL 10302269, at *2 (W.D. Tex. May 13, 2019). And "[i]n trademark and unfair competition cases, 'the wrong takes place . . . where the deceived customer buys the defendant's product in the belief that he is buying the plaintiff's.'" *Bacchanal Hosp., LLC v. Cured, LLC*, No. 16-CV-207 (RCL), 2017 WL 1314194, at *4 (W.D. Tex. Feb. 24, 2017) (quoting *Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 639 (2d Cir. 1956)); *see Tex. Marine & Brokerage, Inc. v. Euton*, 120 F. Supp. 2d 611, 612–13 (E.D. Tex. 2000) ("[T]he venue question in Lanham Act cases . . . is 'where were consumers confused by the defendant's acts?'" (quoting *Woodke v. Dahm*, 873 F. Supp. 179, 198 (N.D. Iowa), *aff'd*, 70 F.3d 983 (8th Cir. 1995))). The allegations in SAI's operative complaint are more than sufficient to demonstrate that Scrum, Inc. allegedly "passed off" services within the Eastern District of Texas while utilizing the marks at issue in this litigation (*see* Dkt. #87 at pp. 7–8, 10–11).

Yet Scrum, Inc. insists that even if these allegations can support SAI's venue argument, the allegations are still not enough to satisfy § 1391(b)(2)'s requirement because the allegations do not show that "a substantial part of the events giving rise to this complaint occurred in this District" (Dkt. #107 at p. 19). The gist of the argument appears to be that, because Scrum, Inc. allegedly offered and taught a limited number of courses using the marks in question within the Eastern District of Texas as compared to other places where it offered and taught the same courses, a substantial part of the events or omissions giving rise to the claims SAI pleads did not occur within the Eastern District of Texas.

This position is ill-conceived. For venue purposes, "substantiality" is determined "by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts"—in other words,

5

substantiality is more qualitative in nature than quantitative. *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432–33 (2d Cir. 2005). The venue in which a plaintiff files suit "does not have to be the place where the most relevant events took place," so long as a "substantial" part of the events or omissions giving rise to the claims transpired there. *McClintock v. Sch. Bd. E. Feliciana Parish*, 299 F. App'x 363, 365 (5th Cir. 2008); *see Zurich Am. Ins. Co. v. Tejas Concrete & Materials Inc.*, 982 F. Supp. 2d 714, 722 (W.D. Tex. 2013) ("Courts have recognized that 'venue may be properly laid in more than one district,' and the 'substantial part of the events or omissions test does not require that the chosen venue be the *best* venue the selected district must simply have a substantial connection to the claim.'" (ellipsis omitted) (quoting *VP, LLC v. Newmar Corp.*, No. CIV.A. 11-2813, 2012 WL 6201828, at *9 (E.D. La. Dec. 12, 2012))). Wherever an "unauthorized passing off takes place" can be a proper venue for a trademark-infringement action, whether the passing off occurs "solely within one district or in many." *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 295 (3d Cir. 1994). Here, SAI alleges that Scrum, Inc., using the marks at issue in this litigation, offered certification courses in the Eastern District of Texas, both physically and virtually. Even if courses were offered in greater volume elsewhere, it would not mean that the alleged passing off by Scrum, Inc. in the Eastern District of Texas is insubstantial under § 1391(b)(2). *See Moore v. Payson Petroleum Grayson*, LLC, No. 3:17-CV-1436-M-BH, 2018 WL 514258, at *4 (N.D. Tex. Jan. 23, 2018) (collecting cases). Scrum, Inc.'s quantitative-venue argument is ultimately unavailing.

### c. Conclusion: The Eastern District of Texas is a Proper Forum

In sum, the Court finds both positions Scrum, Inc. takes as to the 12(b)(3) section of the Motion unpersuasive. Accordingly, the Court determines the Eastern District of Texas to be a proper venue for this lawsuit.

## II.   Section 1404(a)

As previously mentioned, Scrum, Inc.'s inquiry regarding its § 1404(a) position consists of two parts, one regarding a forum-selection clause and the other concerning the standard § 1404(a) analysis**.**  Because the presence of a valid and enforceable forum-selection clause alters the § 1404(a) analysis, the Court first examines the forum-selection-clause argument offered by Scrum, Inc. *See Scrum All., Inc.*, 2021 WL 798310, at *2.

### a.  Forum-Selection Clause

Scrum, Inc. advances threads of various arguments as to why SAI's claims should be transferred on account of a forum-selection clause.  However, the only cognizable position Scrum, Inc. takes in its operative pleadings is that Scrum, Inc. is so closely related to Jeff and JJ Sutherland that Scrum, Inc. is party to the forum-selection clause in the Sutherlands' license agreements as relates to the claims SAI alleges against Scrum, Inc.[1] (Dkt. #107 at pp. 8, 13 n.3, 22–23 & 22 n.6; Dkt. #117 at p. 11).  SAI disagrees, arguing that the forum-selection clause governing its breach-of-contract claim against the Sutherlands applies only to the Sutherlands and not to Scrum, Inc. (Dkt. #114 at p. 31; Dkt. #207 at pp. 1–2).  The Court finds SAI's position to be correct.

It is generally presumed that parties contract only for themselves. *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 362 (5th Cir. 2003).  Yet, in limited circumstances, non-signatory parties to a contract containing a forum-selection clause may be held to the contract's terms. *In re*

---

[1] Another argument debatably appears within a footnote in the Motion: because the agreement between SAI and Scrum, Inc. is sufficiently broad to encompass the Lanham Act claims SAI alleges here, the causes of action remaining before the Court must be transferred pursuant to the forum-selection clause in the agreement between SAI and Scrum, Inc. (Dkt. #107 at p. 22 n.6).  The problem is that this argument is undeveloped, unsupported, and, as such, is waived. *Liggins v. City of Duncanville, Tex.*, No. 3:20-CV-0654-S, 2021 WL 929105, at *10 n.8 (N.D. Tex. Mar. 11, 2021); *see L & A Contracting Co. v. S. Concrete Servs., Inc.*, 17 F.3d 106, 113 (5th Cir. 1994).  It is not the Court's role "to do the legal research that [Scrum, Inc.] has omitted." *Bretford Mfg., Inc. v. Smith Sys. Mfg. Corp.*, 419 F.3d 576, 581 (7th Cir. 2005) (Easterbrook, J.); *see, e.g.*, *Wilson v. City of Mission, Tex.*, No. 7:18-CV-00399, 2020 WL 2079359, at *10 (S.D. Tex. Apr. 29, 2020); *Balderas v. Frontier Enters., Inc.*, No. 5-16-CV-00479-FB-RBF, 2018 WL 835207, at *7 (W.D. Tex. Feb. 12, 2018).

*Lloyd's Register N. Am., Inc.*, 780 F.3d 283, 291 (5th Cir. 2015). "To date, the Fifth Circuit has enumerated six doctrines by which a non-signatory can be bound to a forum selection clause: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; (5) estoppel; and (6) third-party beneficiary." *Stellar Restoration Servs., LLC v. Courtney*, No. 4:20-CV-382-SDJ-KPJ, 2021 WL 1345534, at *13 (E.D. Tex. Mar. 11, 2021) (citing *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517 (5th Cir. 2006)), *report and recommendation adopted*, 2021 WL 1185960 (E.D. Tex. Mar. 30, 2021). In a broader sense, a non-signatory can be held to the terms of a forum-selection clause if the non-signatory is "so inextricably intertwined" with the signatory parties that it should be subject to the forum-selection clause. *Huawei Techs. Co., Ltd. v. Yiren Huang*, No. 4:17-CV-00893, 2018 WL 1964180, at *9 (E.D. Tex. Apr. 25, 2018); *see Weatherford Int'l, LLC v. Binstock*, 452 F. Supp. 3d 561, 570 (S.D. Tex. 2020) ("Federal courts have permitted enforcement of forum-selection clauses against a non-signatory defendant who is 'closely related to the dispute such that it becomes foreseeable that it will be bound.'" (quoting *Marano Enters. of Kan. v. Z-Teca Rests., L.P.*, 254 F.3d 753, 757 (8th Cir. 2001))). "The party seeking to enforce a forum-selection clause against a non-signatory bears the burden to identify and prove a theory under which the non-signatory may be bound." *MaxoTech Sols. LLC v. PamTen Inc.*, No. 3:20-CV-1387-S, 2020 WL 6489015, at *4 (N.D. Tex. Nov. 3, 2020).

The line of reasoning Scrum, Inc. advances is puzzling—and ultimately without merit. Scrum, Inc. does not even attempt to specify which of the six theories regarding binding a non-signatory to a contract would control in this situation. The extent of Scrum, Inc.'s argument is that the agreements between the Sutherlands and SAI are "directly relevant to whether SAI may maintain its trademark claims" against Scrum, Inc. (Dkt. #107 at p. 23). This generalized position,

devoid of further detail or supporting precedent, is insufficient.[2] After scouring Scrum, Inc.'s pleadings, the Court finds that Scrum, Inc. cannot be a party to the agreements between the Sutherlands and SAI, and, therefore, Scrum, Inc. cannot call upon the specific forum-selection clause it attempts to invoke here.

Absent a valid and enforceable forum-selection clause, the Court proceeds to conduct an unaltered § 1404(a) analysis. *See Scrum All., Inc.*, 2021 WL 798310, at *2.

### b. 1404(a) – Forum Transfer

#### i. Legal Standard

District courts may transfer a case "for the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). "The underlying premise of § 1404(a) is that courts should prevent plaintiffs from abusing their privilege under § 1391 by subjecting defendants to venues that are inconvenient under the terms of § 1404(a)." *In re Volkswagen of Am., Inc.* (*Volkswagen II*), 545 F.3d 304, 313 (5th Cir. 2008) (en banc). Yet "there is ordinarily a *strong* presumption in favor of the plaintiff's choice of forum that may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Schexnider v. McDermott Int'l, Inc.*, 817 F.2d 1159, 1163 (5th Cir. 1987) (emphasis added) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981)). The defendant bears the burden to prove that "the transferee venue is 'clearly more convenient' than the transferor venue." *Guido v. Metro. Life Ins. Co.*, No. 2:14-CV-320-JRG-RSP, 2015 WL 12748312, at *1 (E.D. Tex. Mar. 31, 2015) (quoting *Volkswagen II*, 545 F.3d at 315).

---

[2] Further, the Court has previously stated that it would make "little sense" to find that "a forum-selection clause binding one defendant would apply to a claim sounding in tort against a co-defendant not bound by that same forum-selection clause." *Scrum All., Inc.*, 2021 WL 798310, at *5 (emphasis omitted).

9

"Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). District courts have broad discretion when deciding transfer motions. *United States v. Asibor*, 109 F.3d 1023, 1037 (5th Cir. 1997); *Reliable Automatic Sprinkler Co. Inc. v. Sunbelt Group L.P.*, 472 F. Supp. 3d 64, 71 (S.D.N.Y. 2020) ("'District courts have broad discretion' to determine 'convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis.'" (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006))).

When considering a motion to transfer, district courts begin by determining "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG* (*Volkswagen I*), 371 F.3d 201, 203 (5th Cir. 2004) (citing *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir.), *cert. denied*, 540 U.S. 1049 (2003)). If this inquiry is satisfied, "the focus shifts to whether the party requesting the transfer has demonstrated the 'convenience of parties and witnesses' requires transfer of the action, considering various private and public interests." *Int'l Fidelity Ins. Co. v. Bep Am., Inc.*, No. A-17-CV-973-LY, 2018 WL 2427377, at *2 (W.D. Tex. May 29, 2018) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1974)), *report and recommendation adopted*, 2018 WL 4343431 (W.D. Tex. July 19, 2018).

> The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law."

*Volkswagen II*, 545 F.3d at 315 (citations and brackets omitted).

"These factors are decided based on 'the situation which existed when suit was instituted,'" *Garrett v. Hanson*, 429 F. Supp. 3d 311, 317 (E.D. Tex. 2019) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960))—they are "neither 'exhaustive' nor 'exclusive,' and 'none can be said to be of dispositive weight,'" *Tricon Precast, Ltd. v. Easi Set Indus., Inc.*, 395 F. Supp. 3d 871, 878 (S.D. Tex. 2019) (quoting *Volkswagen II*, 545 F.3d at 313).

### ii. Analysis

Neither party disputes that this lawsuit could have been filed in the District of Massachusetts. The parties disagree, however, as to which forum the convenience-of-transfer factors favor: the Eastern District of Texas or the District of Massachusetts. *Compare* (Dkt. #107 at pp. 27–29), *with* (Dkt. #114 at pp. 34–37). Of the eight factors gauged in the forum-convenience context, Scrum, Inc. states that five of them are neutral.[3] Scrum, Inc. then argues that the three remaining convenience factors—the availability of compulsory process to secure the attendance of witnesses; the cost of attendance for willing witnesses; and all other practical problems that make trial of a case easy, expeditious and inexpensive—weigh in its favor, thereby demonstrating that the District of Massachusetts is clearly a more convenient venue than the Eastern District of Texas. The Court turns to these § 1404(a) factors to determine whether the District of Massachusetts is the clearly more convenient forum.

---

[3] For certain convenience factors, Scrum, Inc. only offers conclusory statements to support the neutrality argument. As such, the Court assumes that the factors Scrum, Inc. does not substantively address are either "neutral or do not favor transfer." *EnviroGLAS Prods., Inc. v. EnviroGLAS Prods., LLC*, 705 F. Supp. 2d 560, 570 (N.D. Tex. 2010). Further, some factors Scrum, Inc. claims are neutral likely cut against its position. For instance, the factor regarding the forum's familiarity with governing law weighs in SAI's favor here since the only non-federal claim in the operative complaint, Count 3, alleges that Scrum, Inc. committed trademark infringement and unfair competition under Texas law (Dkt. #87 at p. 13). *See O'Neal v. Bumbo Int'l Tr.*, No. 6:11-CV-72, 2014 WL 12599322, at *2 (S.D. Tex. Jan. 7, 2014) (Costa, J.).

11

### 1. The Availability of Compulsory Process

The Federal Rules of Civil Procedure empower federal courts to compel a witness's attendance at trial, hearing, or deposition by subpoena, but this power is limited to those "within 100 miles of where the [witness] resides, is employed, or regularly transacts business in person" and those "within the state where the [witness] resides, is employed, or regularly transacts business in person, if the [witness] is a party or a party's officer; or is commanded to attend a trial and would not incur substantial expense." FED. R. CIV. P. 45(c)(1)(A)–(B). Scrum, Inc. argues that the ability to compel process is more readily available in the District of Massachusetts since "key witnesses in this case reside, are employed, or regularly transact business within 100 miles" of that district (Dkt. #107 at p. 28). SAI counters by arguing that Scrum, Inc. does not identify any "unwilling witnesses who would be subject to compulsory process in the District of Massachusetts[] but would not be in the Eastern District of Texas" (Dkt. #114 at p. 35).

Scrum, Inc.'s conclusory statements regarding compulsory process do not help its argument as to this factor. *See Martin v. J.A.M. Distrib. Co.*, No. 1:08-CV-298, 2008 WL 11348011, at *5 (E.D. Tex. Sept. 12, 2008). Scrum, Inc. carries the analytical burden here, and simply asserting that unnamed "key witnesses" who would appear *only if subpoenaed* does not bring it close to satisfying its burden. At best, this factor is neutral.

### 2. Cost of Attendance for Willing Witnesses

"The relative convenience to the witnesses is often recognized as the most important factor to be considered in ruling on a motion under § 1404(a)." *Gundle Lining Const. Corp. v. Fireman's Fund Ins. Co.*, 844 F. Supp. 1163, 1166 (S.D. Tex. 1994). In the Fifth Circuit, courts use the "100–mile" threshold to analyze the cost of attendance for willing witnesses. *In re Radmax, Ltd.*, 720 F.3d 285, 288–89 (5th Cir. 2013). Under this rule, "[w]hen the distance between an existing venue

for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05. "Where witnesses are from widely scattered locations, a trial court should not consider its 'central location in the absence of witnesses within the plaintiff's choice of venue.'" *Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*, 867 F. Supp. 2d 859, 870 (E.D. Tex. 2012) (ellipsis omitted) (quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1344 (Fed. Cir. 2009)).

In considering the convenience for witnesses, courts "should 'not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum. Instead, [they] must qualitatively evaluate the materiality of the testimony that the witnesses may provide.'" *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006) (quoting *Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F. Supp. 2d 282, 286 (S.D.N.Y. 2004)); *see Remmers v. United States*, No. CIV. A. 1:09-CV-345, 2009 WL 3617597, at *5 (E.D. Tex. Oct. 28, 2009) (brackets omitted) ("Indeed, 'the convenience of one key witness may outweigh the convenience of numerous less important witnesses.'" (quoting *Hous. Trial Reps., Inc. v. LRP Publ'ns, Inc.*, 85 F. Supp. 2d 663, 668 (S.D. Tex. 1999))). Importantly, "it is the convenience of non-party witnesses, rather than that of party witnesses, that is the more important factor and is accorded greater weight in a transfer of venue analysis." *State St. Cap. Corp. v. Dente*, 855 F. Supp. 192, 198 (S.D. Tex. 1994). "The distance between a non-party's residence and the court where the witness will be called to testify serves as a proxy for convenience in this analysis." *In re Orion Marine Constr., Inc.*, No. 3:20-CV-00309, 2020 WL 8083679, at *5 (S.D. Tex. Dec. 21, 2020), *report and recommendation adopted*, 2021 WL 76793 (S.D. Tex. Jan. 8, 2021).

Scrum, Inc. argues that this factor weighs in favor of the District of Massachusetts since the Sutherlands and "the majority of Scrum, Inc.'s employees" reside in Massachusetts, and "the majority of the witnesses" are on the East Coast (Dkt. #107 at pp. 27–28). By contrast, SAI maintains that this factor favors the Eastern District of Texas since this consideration primarily considers non-party witnesses, and Scrum, Inc. did not identify "any third party witnesses to which they refer, where these third party witnesses reside, the substance of their testimony, or what the cost of attendance would be for those non-party witnesses" (Dkt. #114 at p. 36). SAI's position is more persuasive.

For one thing, Scrum, Inc.'s focus on the convenience of the Eastern District of Texas to party witnesses is not particularly helpful to its asserted position. While undoubtedly part of this factor's calculus, the convenience of the transferor forum to party witnesses is significantly less important than that forum's convenience to non-party witnesses. *See Healthpoint, Ltd. v. Derma Scis.*, Inc., 939 F. Supp. 2d 680, 692 (W.D. Tex. 2013). Moreover, even if Scrum, Inc.'s party witnesses are located in Massachusetts, because Scrum, Inc. is the movant here, the convenience of these witnesses "is entitled to less weight because [Scrum, Inc.] is able to compel their attendance." *Empty Barge Lines II, Inc. v. Fisher*, 441 F. Supp. 2d 786, 793 (E.D. Tex. 2006); *see LeBouef v. Gulf Operators, Inc.*, 20 F. Supp. 2d 1057, 1060 (S.D. Tex. 1998) (explaining that when "anticipated witnesses are employees of the party seeking transfer, the sympathy of th[e] Court is forfeited").

Just as well, Scrum, Inc. does not specify a single non-party witness the Eastern District of Texas inconveniences. "At an absolute minimum, [Scrum, Inc.] must identify key witnesses and provide a brief summary of their likely testimony in an effort to demonstrate to the Court why it would be inconvenient for them to testify in [Sherman]." *McGinnis v. Eli Lilly & Co.*, 181 F.

Supp. 2d 684, 688 (S.D. Tex. 2002); *see Dupre v. Spanier Marine Corp.*, 810 F. Supp. 823, 825 (S.D. Tex. 1993) ("[T]he moving party must do more than make a general allegation that certain key witnesses are needed."). Because Scrum, Inc. has not done so here, and SAI actually has provided some specifics regarding the availability of witnesses local to the Eastern District of Texas (*see* Dkt. #114 at p. 36), if this factor tilts in favor of either of these parties, it would most likely be SAI. *See, e.g.*, *TGI Friday's Inc. v. Great Nw. Rests., Inc.*, 652 F. Supp. 2d 750, 762 (N.D. Tex. 2009).

### 3. All Other Practical Problems

When considering the practical-problems factor of § 1404(a), courts generally examine matters or issues that are "rationally based on judicial economy." *Eolas Techs., Inc. v. Adobe Sys., Inc.*, No. 6:09-CV-446, 2010 WL 3835762, at *6 (E.D. Tex. Sept. 28, 2010). Scrum, Inc. advances two arguments under this factor, neither of which is compelling.

First, the parties argue that the place where the alleged wrong occurred matters to this factor in the forum-convenience analysis. Scrum, Inc. states that the place of the alleged wrong in this case is where the alleged infringer conducted the purportedly infringing activities, which Scrum, Inc. claims to be the District of Massachusetts—the location of Scrum, Inc.'s headquarters (Dkt. #107 at p. 27). SAI disagrees, arguing that because Scrum, Inc. "conducted training courses within the Eastern District of Texas using the marks at issue, solicited and received business from hundreds of individuals located within this District, and received thousands of dollars in revenue from individuals located within this District," the place the alleged wrong occurred was the Eastern District of Texas (Dkt. #114 at p. 35). As the Court addressed above regarding the 12(b)(3) argument, the analytical locus in trademark-infringement cases is wherever the infringing activity takes place. *Hopdoddy Burger Bar*, 2015 WL 4624644, at *2. As pleaded, the alleged infringing

15

activity occurred, among other places, in the Eastern District of Texas. This being the case, Scrum, Inc.'s position here does not aid its convenience argument as to the District of Massachusetts.

Second, Scrum, Inc. attempts to rehash its point regarding the place of the alleged wrong in arguing that SAI's decision to file suit in the Eastern District of Texas is entitled to less deference because the district "has no legally relevant factual nexus with either SAI or the claims in the case" (Dkt. #107 at pp. 28–29). But as explained in the previous paragraph, the premise of this statement is incorrect and, as such, does not carry weight here.

Furthermore, "[w]hile not a distinct factor in the transfer of venue analysis, a plaintiff's choice of venue 'is nonetheless taken into account as it places a significant burden on the movant to show good cause for the transfer.'" *Remmers*, 2009 WL 3617597, at *7 (quoting *Volkswagen II*, 545 F.3d at 314 n.10); *see Coll v. Abaco Operating LLC*, No. 2:08-CV-345 (TJW), 2009 WL 3063333, at *5 (E.D. Tex. Sept. 21, 2009) (finding that the good cause burden in the § 1404(a) analysis "reflects the appropriate deference" to the plaintiff's choice of forum). Here, the Eastern District of Texas has a clear factual nexus to the case given that the alleged infringing activity pleaded in SAI's operative complaint occurred in this district. *See, e.g.*, *Clemens v. McNamee*, 608 F. Supp. 2d 811, 828 (S.D. Tex. 2009), *aff'd*, 615 F.3d 374 (5th Cir. 2010). Therefore, Scrum, Inc.'s argument falls flat, and the practical-problems factor is, at best, neutral.

### iii. Conclusion: The District of Massachusetts is Not Clearly More Convenient than the Eastern District of Texas

The Court thus finds that five (5) of the private- and public-interest factors are neutral, and three (3) factors either weigh slightly against transfer or are neutral. Therefore, the Court finds that Scrum, Inc. has not satisfied its burden to show that the District of Massachusetts is a "clearly more convenient" forum for this litigation. *Volkswagen II*, 545 F.3d at 315.

**IT IS SO ORDERED.**

**SIGNED this 7th day of May, 2021.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE